693 F.Supp. 531 (1988)
CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and Employee Benefit Plan, and Howard McDougall, Trustee, Plaintiffs,
v.
LLOYD L. SZTANYO TRUST, Lloyd L. Sztanyo Company, a Michigan Co-Partnership, Lloyd L. Sztanyo Company, a Sole Proprietorship, Lloyd L. Sztanyo d/b/a Lloyd L. Sztanyo a Sole Proprietor, and Lloyd L. Sztanyo, Personally, as the Co-Partner in Lloyd L. Sztanyo Co., individually, jointly and severally, Defendants.
Civ. A. No. 86-1219.
United States District Court, E.D. Michigan, S.D.
July 26, 1988.
*532 *533 Thomas J. Blessing, Bloomfield Hills, Mich., for plaintiffs.
Martin J. Leavitt, Karen L. Faber, Northville, Mich., for defendants.

MEMORANDUM OPINION AND ORDER
SUHRHEINRICH, District Judge.
The present lawsuit was brought by plaintiffs Central States, Southeast and Southwest Areas Pension Fund, and the pension fund's trustee, Howard McDougall (hereinafter collectively referred to as Central States). Central States filed suit on March 26, 1986 against the defendants, Lloyd L. Sztanyo Trust; Lloyd L. Sztanyo Company, a co-proprietorship; Lloyd L. Sztanyo d/b/a Lloyd L. Sztanyo, a sole proprietorship; and Lloyd L. Sztanyo in his personal capacity, as a co-partner in Lloyd L. Sztanyo Co., individually, jointly and severally (hereinafter collectively referred to as the defendants). In the complaint, Central States alleges that these defendants are jointly and severally liable for Employee Retirement and Income Security Act (ERISA) withdrawal liability.[1] This withdrawal liability was previously assessed against Apollo Truck Lines, Inc.; Apollo Expediting, Inc.; and Jordan Engineering and Consultants, Inc. As grounds for their allegations, Central States asserts that the defendants are members of the same controlled group as Apollo Truck Lines, Inc.; Apollo Expediting, Inc.; and Jordan Engineering and Consultants, Inc. Central States obtained a consent judgment against the latter three companies in a previous lawsuit. See Apollo Truck Lines v. Central States, No. 83-3135 (E.D.Mich. January 30, 1985) (consent judgment). Apollo Truck Lines, Apollo Expediting, and Jordan Engineering and Consultants were counter-defendants in that case. Under the terms of the consent judgment, Central States was to receive a total judgment of $881,130.83 plus interest. This total represented ERISA withdrawal liability of $638,477.20, unpaid interest on the withdrawal liability through December 26, 1984, statutory damages pursuant to 29 U.S.C. § 1132(g)(2)(C)(ii), and attorney fees and costs.
Currently pending before the Court is Central States' motion for summary judgment, to which defendants have responded. Central States filed both a reply and supplemental briefs. The defendants have also filed a summary judgment motion; Central States has responded to that motion. Central States seeks summary judgment on the ground that the defendants are joint obligors with the three counter-defendants in Civil Action No. 83-3135. It is contended that, under the provisions of the Multi-employer Pension Plan Amendment Act of 1980 (MPPAA), 29 U.S.C. §§ 1301-1453, the defendants in the present case and the counter-defendants in the earlier case are in the same controlled group and hence are a single employer. Therefore, Central States asserts that the present defendants are jointly and severally liable for any withdrawal liability assessed against the previous counter-defendants.
Central States also contends that the defendants' affirmative defenses should be stricken. These defenses are laches, election of remedies, collateral estoppel due to *534 a previous judgment, estoppel due to the absence of indispensable parties, and estoppel due to the actions of the parties and/or their representatives. It is claimed that these defenses are not applicable under the facts of this case.
The defendants seek summary judgment on several grounds. First, they allege that Central States has failed to state a cause of action upon which relief may be granted. In specific, defendants aver that Central States, although alleging a cause of action under ERISA, actually seeks to enforce a consent judgment. Thus, defendants contend that ERISA has been improperly evoked. Second, it is contended that the consent judgment entered in Civil Action No. 83-3135 constituted an accord and satisfaction of the claims which gave rise to the consent judgment. On this basis, defendants contend that the claim for withdrawal liability involved in Civil Action No. 83-3135 was extinguished by the consent judgment. Therefore, defendants assert that Central States cannot pursue a claim for withdrawal liability even if the present defendants and the counter-defendants in Civil Action 83-3135 are in the same controlled group. Finally, defendants assert that there is no common control between the present defendants and the previous counter-defendants such that the present defendants are liable for the previous counter-defendants' obligations. In accordance with Local Rule 17(l)(2), the Court shall hold no hearing in this matter.
The standards to be utilized in deciding motions for summary judgment are clear. Fed.R.Civ.P. 56(c) dictates the entry of summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and the affidavits, if any, demonstrate that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. Under Fed.R.Civ.P. 56(e), the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986). The movant in a motion for summary judgment has the initial responsibility of informing the Court of the basis for the motion and demonstrating the absence of a genuine issue of material fact. Fed.R.Civ.P. 56(e). There is no express or implied requirement that the moving party support its motion with affidavits or similar materials negating the opponent's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the nonmovant cannot establish an essential element of his claim and summary judgment is appropriate, the movant is entitled to entry of summary judgment as a matter of law. Id. Finally, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). These standards shall be applied in deciding the summary judgment motions currently before the Court.
Before examining the merits of the two summary judgment motions, note should be taken of issues previously resolved in this matter. In its Memorandum Opinion and Order of June 9, 1988, the Court rejected defendants' argument that the consent judgment in Civil Action No. 83-3135 constituted an accord and satisfaction of the withdrawal liability. Finding the argument to be without legal basis, the Court denied defendants' motion to amend their answer to assert the defense of accord and satisfaction. Therefore, defendants' contention in their motion for summary judgment that the claim for withdrawal liability was extinguished by the consent judgment is without merit. As the elements of accord and satisfaction are missing in the present case, defendants' contentions based on that defense are baseless.
Also without merit is defendants' contention that Central States has not stated a cause of action under ERISA. Defendants claim that Central States seeks only to enforce a consent judgment to which defendants were not parties, rather than to establish or collect ERISA withdrawal liability. Defendants argue that Central States is actually seeking to add defendants to a judgment entered in a previous proceeding. On this basis, defendants *535 claim that summary judgment should be granted in their favor, since Central States has failed to state a cause of action for which relief can be granted.
On review of the complaint in this matter, it is apparent that an ERISA claim is stated. The defendants' claim that Central States seeks to enforce a consent judgment is based on a single reference in the complaint to the consent judgment in Civil Action No. 83-3135 and a demand letter sent to the defendants which sought the amount of the consent judgment. The demand letter is dated March 19, 1986, a full week prior to the filing of the instant lawsuit. The Court finds these references insufficient to establish defendants' claim. The demand letter and the complaint clearly refer to ERISA withdrawal liability. Despite the references to the consent judgment in Civil Action No. 83-3135, the complaint obviously seeks payment of ERISA withdrawal liability. Even though the consent judgment references could be construed arguendo as seeking enforcement of the consent judgment, such a construction would not mean that an ERISA claim has not been stated. Rather, the rules of pleading indicate that, when two or more statements of a claim are made, the insufficiency of one statement of the claim does not render the pleading insufficient. Fed. R.Civ.P. 8(e)(2). Additionally, the rules of pleading require the Court to construe the pleadings "as to do substantial justice." Fed.R.Civ.P. 8(f). Substantial justice would not be done in this case were the Court to take the defendants' position. See Starks v. Perloff Bros., Inc., 760 F.2d 52 (3d Cir.1985) (overly restrictive reading of complaint inconsistent with Rule 8(f)). The complaint sufficiently states facts supporting an ERISA claim, and the Court shall deny defendants' motion on this issue.
Finally, defendants contend that the complaint contains no allegations which would lead to a finding that withdrawal liability exists or which would provide evidence of the amount of withdrawal liability assessed against the counter-defendants in Civil Action No. 83-3135. However, the complaint adequately sets forth Central States' assertion that defendants, as members of the same controlled group of trades or businesses as the previous counter-defendants, owe the withdrawal liability assessed against the previous counter-defendants. Further, the complaint need not present evidence of the amount of withdrawal liability to properly state a claim. It is sufficient that ERISA withdrawal liability is alleged. See Schlick v. Penn Dixie Cement Corp., 507 F.2d 374 (2d Cir. 1974) (plaintiff not required to plead evidence in complaint).
The major issue remaining to be resolved in this case is whether the defendants have joint and several liability with the previous counter-defendants for the ERISA withdrawal liability. Such liability may exist if the defendants are found to be trades or businesses under common control with the previous counter-defendants. Pursuant to ERISA, a "single employer" is defined as "trades or businesses (whether or not incorporated) which are under common control." 29 U.S.C. § 1301(b)(1). Section 1301(b)(1) specifically adopts the regulations prescribed under 26 U.S.C. § 414(c) for determining whether a single employer is present. See also 29 U.S.C. § 1301(a)(14)(B) (adopting regulations prescribed under 26 U.S.C. § 414(b) and (c) for determining whether common control exists). If common control does exist among a group of trades or businesses, the commonly controlled group of trades or businesses is treated as a single employer. As a group under common control, each trade or business would possess joint and several liability for withdrawal liability. Combs v. Adkins & Adkins Coal Co., Inc., 597 F.Supp. 122, 128 (D.D.C.1984). Cf. Pension Benefit Guaranty Corp. v. Ouimet Corp., 711 F.2d 1085, 1089-90 (1st Cir.), cert. denied, 450 U.S. 914, 101 S.Ct. 1356, 67 L.Ed.2d 339 (1983) (no due process violation when withdrawal liability of one member of controlled group was imposed on entire group of controlled corporations).
In order for the defendants and the counter-defendants in Civil Action No. 83-3135 to be a "single employer" for ERISA purposes, they must be trades or businesses *536 which are under common control. There is no dispute that the counter-defendants in Civil Action No. 83-3135 were conducting "trades or businesses." However, the current defendants contend that they were not conducting trades or businesses. Specifically, defendants deny that Lloyd L. Sztanyo Co., a sole proprietorship, was in the trade or business of leasing equipment; they deny that Lloyd L. Sztanyo Trust was in the trade or business of leasing real estate and office space; they deny that Lloyd L. Sztanyo Co., a partnership, was in the business of leasing real estate and office space; and they deny that Lloyd L. Sztanyo d/b/a Lloyd L. Sztanyo conducted the trade or business of factoring, trip leasing, and renting equipment, land, office space, and apartments. It is asserted that whether any of the defendants were conducting trades or businesses is a factual issue which must be established at trial rather than in the context of a summary judgment motion.
Defendants' contention that whether they were conducting trades or businesses is a factual issue which cannot be decided in a motion for summary judgment is erroneous. Such an issue may be decided in the context of a summary judgment motion if warranted under the standards for summary judgment. See United Food and Commercial Workers Union v. Progressive Supermarkets (United Food), 644 F.Supp. 633 (D.N.J.1986) (establishing in summary judgment context that defendant operated trade or business). Defendants' recitation of Pension Benefit Guaranty Corp. v. Center City Motors, Inc. (Center City), 609 F.Supp. 409 (S.D.Cal.1984), for the proposition that summary judgment cannot be granted under such circumstances is incorrect. In Center City, the Court denied the defendants' summary judgment motion. The defendants sought summary judgment on the grounds that their rental property proprietorship was not a trade or business within the meaning of 29 U.S.C. § 1301(b). Finding that the purposes of ERISA did not support defendants' position and that the rental activities constituted a trade or business, the Center City court denied their motion. Thus, Center City does not stand for the proposition that summary judgment cannot be granted when the issue of whether a trade or business is being conducted is involved. Rather, Center City demonstrates that whether a trade or business is being conducted can be determined in the context of a summary judgment motion.
Although ERISA directs the Court to utilize 26 U.S.C. § 414(c) and the regulations promulgated thereunder in determining whether a single employer exists, the statute and regulations contain no definition of "trades or businesses." See United Food, supra. Nor do other provisions of the Internal Revenue Code (IRC) necessarily determine how the phrase "trade or business" should be interpreted for ERISA purposes. See Commissioner v. Groetzinger, 480 U.S. 23, n. 8, 107 S.Ct. 980, 983 n. 8, 94 L.Ed.2d 25, 32 n. 8 (1987) (meaning of "trade or business" must be ascertained for the specific IRC sections at issue). Due to lack of a definition of "trade or business" in § 414(c), the court in United Food determined that "[i]n the absence of clear guidance from 26 U.S.C. § 414(c), or even from the Internal Revenue Code in general, the meaning of `trade or business' should be interpreted in light of the intentions of ERISA." 644 F.Supp. at 638. Accord, Center City, supra (interpretations given to "trade or business" in IRC not determinative of how those terms are interpreted under ERISA). Finding the reasoning in United Food persuasive, the Court shall look to the purpose of ERISA for how "trade or business" should be interpreted in this case.
The purpose of ERISA is to prevent trades or businesses from limiting their responsibilities under ERISA by fractionalizing their business operations. Center City, 609 F.Supp. at 412. As stated in the Senate report on ERISA, "[T]he committee, by this provision [§ 1301(b)], intends to make it clear that the coverage and antidiscrimination provisions cannot be avoided through separate corporations instead of separate branches of one corporation." S.Rep. No. 383, 93d Cong., 2d Sess. 43 (1974), U.S.Code Cong. & Admin.News *537 1974, p. 4639. The purpose of § 1301(b) was "to prevent the great personal tragedy suffered by employees whose vested benefits are not paid when pension plans are terminated." Nachman Corp. v. Pension Benefit Guaranty Corp., 446 U.S. 359, 374, 100 S.Ct. 1723, 1733, 64 L.Ed.2d 354 (1980). "Congress wanted to correct [the lack of payment of vested benefits due to plan termination] by making sure that if a worker has been promised a defined pension benefit upon retirementand if he has fulfilled whatever conditions are required to obtain a vested benefitthat he actually receive it." Id. at 375, 100 S.Ct. at 1733. In accordance with this purpose, § 1301(b) utilizes control group liability to prevent businesses from "juggl[ing] their activities to eviscerate the termination liability provisions of ERISA." Pension Benefits Guaranty Corp. v. Ouimet Corp., 470 F.Supp. 945, 955 (D.Mass.1979). Insulation of assets from ERISA liability is directly opposite to the purposes of § 1301(b). United Food, supra at 639.
In consideration of ERISA's purposes, three courts have specifically found that net leases between two entities under common control constituted a "trade or business." See United Food, supra; Center City, supra; Western Conf. of Teamsters Pension Trust Fund v. LaFrenz, 837 F.2d 892 (9th Cir.1988). The Court finds the reasoning in these cases to be in full accord with ERISA, and shall adopt that reasoning in deciding the present case.
Lloyd L. Sztanyo Co., a sole proprietorship, clearly leased vehicles to both Apollo Expediting and John Wood Cartage n/k/a Jordan Engineering and Consultants. It also rented facilities to Apollo Expediting. Following the reasoning of United Foods, Center City, and LaFrenz, this organization was, for ERISA purposes, conducting a trade or business. Notably, Mr. Sztanyo listed his 1980, 1981, and 1982 revenue and expenses from this sole proprietorship on Schedule B of his tax returns for those years. Schedule B is for reporting of profit or loss from a business or profession.
The Lloyd L. Sztanyo Trust also rented buildings to John Wood Cartage n/k/a Jordan Engineering and Consultants, Apollo Truck Lines, and Apollo Expediting. Pursuant to Lloyd L. Sztanyo's deposition, the lease arrangement between these companies and the Trust was on a net lease basis. Based on these facts, the Court concludes that the Lloyd L. Sztanyo Trust was conducting a trade or business for ERISA purposes.
The Lloyd L. Sztanyo Co., a co-partnership, acted as a holding company for the Lloyd L. Sztanyo Trust. The partnership, a nominee partnership, held title to properties owned by the Trust and by Lloyd L. Sztanyo personally, acting at the behest of the trustees of the Trust. The co-partnership had no power to act on its own; it was an adjunct or corollary to the Trust. No income or revenues were apparently generated by the copartnership. Under these facts, it is difficult at best to view the partnership as an investment of any sort. No profits were received by the partnership, and it apparently functioned solely at the Trust's whim. However, as the partnership acted merely as an operating arm of the trust, the Court shall treat the partnership and the Trust as the same entity. This entity shall be referred to as the Lloyd L. Sztanyo Trust. The Court's treatment of the Trust and the partnership as the same entity is in total accord with their actual function, since the partnership acted only as directed by the Trust. Further, treating Trust and partnership as the same entity is in line with the purposes of ERISA. Thus, although the partnership itself may not be conducting a trade or business, it shall be treated as a branch of the Trust which, as concluded above, does conduct a trade or business.
Lloyd L. Sztanyo d/b/a Lloyd L. Sztanyo also conducted a trade or business. Among the activities engaged in by this organization were vehicle leasing, apartment rentals, and factoring, among others. Some of these activities were performed for Apollo Truck Lines, Apollo Expediting, or John Wood Cartage n/k/a Jordan Engineering and Consultants. These activities clearly constitute trades or businesses *538 within the purview of United Food, Center City, and LaFrenz.
Having determined that the Lloyd L. Sztanyo Co., a sole proprietorship, the Lloyd L. Sztanyo Trust, and Lloyd L. Sztanyo d/b/a Lloyd L. Sztanyo, all conduct trades or businesses, the Court must now determine whether those entities are under common control with the counter-defendants in Civil Action No. 83-3135. 29 U.S.C. § 1301(b)(1).
Central States relies on the consent judgment as well as an admission filed in Civil Action No. 83-3135 to establish that the counter-defendants in that case were members of the same controlled group. The admission was made pursuant to Fed.R. Civ.P. 36,[2] and the consent judgment was entered without prejudice. Central States' reliance on these documents is misplaced.
Admissions under Fed.R.Civ.P. 36 do not have preclusive effect on issues in later cases. Fed.R.Civ.P. 36(b); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4443 (1981 and Supp.1987). Nor do consent judgments necessarily have preclusive effect. Rather, "[t]he basically contractual nature of consent judgments has led to general agreement that preclusive effects should be measured by the intent of the parties." Id. Since consent judgments are typically intended to preclude further litigation on the claim presented but are not intended to preclude further litigation on any of the issues presented, they usually are found to be claim preclusive but not issue preclusive. Id.
In Civil Action No. 83-3135, the consent judgment appears to be neither claim nor issue preclusive. As the consent judgment was entered without prejudice, it does not bar further litigation on the claim involved. Additionally, since the consent judgment did not include any findings, the parties were not bound by any issues involved. See Lawlor v. National Screen Service Corp., 349 U.S. 322, 327, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955). Accordingly, the Court finds that the admissions made in Civil Action No. 83-3135 and the consent judgment entered in that case have no preclusive effect on the instant case.
The Court's determination of the relationships between the parties must, therefore, be made without reference to the admissions made in the previous litigation. Central States asserts that the previous counter-defendants and the present defendants are under common control. Title 29, C.F.R., § 11.414(c)(2)(a) provides:
For purposes of this section, the term "two or more trades or businesses under common control" means any group of trades or businesses which is either a "parent-subsidiary group of trades or businesses under common control"..., a "brother-sister group of trades or businesses under common control"..., or a "combined group of trades or businesses under common control".... For purposes of this section ..., the term "organization" means a sole proprietorship, a partnership ..., a trust, an estate, or a corporation.
A brother-sister group of trades or businesses under common control is defined in 29 C.F.R. § 11.414(c)-2(c)(1) as:
[T]wo or more organizations conducting trades or businesses if (i) the same five or fewer persons who are individuals, estates, or trusts own ... singly or in combination, a controlling interest of each organization, and (ii) taking into account the ownership of each such person only to the extent such ownership is identical with respect to each such organization, such persons are in effective control of each organization.
In 29 C.F.R. § 11.414(c)-2(b)(2), what constitutes a controlling interest in various organizations is set forth. That regulation states:
[T]he phrase "controlling interest" means:

*539 (A) In the case of an organization which is a corporation, ownership of stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote of such corporation or at least 80 percent of the total value of shares of all classes of stock of such corporation;
(B) In the case of an organization which is a trust or estate, ownership of an actuarial interest of at least 80 percent of such trust or estate;
(C) In the case of an organization which is a partnership, ownership of at least 80 percent of the profits interest or capital interest of such partnership; and
(D) In the case of an organization which is a sole proprietorship, ownership of such sole proprietorship.
In the present case, the defendants' response to Central States' first set of interrogatories indicates that at the times pertinent to this lawsuit: (1) Apollo Expediting, Inc., was a corporation of which 75% was owned by Lloyd L. Sztanyo;[3] (2) Apollo Truck Lines, Inc., was a corporation which was 100% owned by Lloyd L. Sztanyo; (3) Jordan Engineering and Consultants, Inc., f/n/a John Wood Cartage Company, was 100% owned by Lloyd L. Sztanyo; (4) Lloyd L. Sztanyo Trust was 100% beneficially held by Lloyd L. Sztanyo; (5) Lloyd L. Sztanyo Co., a co-partnership, was 100% beneficially owned by Lloyd L. Sztanyo; and (6) Lloyd L. Sztanyo d/b/a Lloyd L. Sztanyo, a sole proprietorship, was 100% owned by Lloyd L. Sztanyo.[4] The response to the interrogatories makes no indication as to the ownership of Lloyd L. Sztanyo Co., a sole proprietorship. However, in their response to Central States' present motion for summary judgment and to strike affirmative defenses, defendants indicate that this sole proprietorship is beneficially owned by Lloyd L. Sztanyo. Pursuant to Fed.R.Civ.P. 56(c), the Court may properly consider these answers to interrogatories and responsive pleadings in deciding the present motions for summary judgment.
As the percentages set forth above indicate, at the times pertinent to this lawsuit, Lloyd L. Sztanyo held a controlling interest in Apollo Truck Lines; Jordan Engineering and Consultants; Lloyd L. Sztanyo Trust; Lloyd L. Sztanyo Co., a co-partnership; Lloyd L. Sztanyo d/b/a Lloyd L. Sztanyo, a sole proprietorship; and Lloyd L. Sztanyo Co., a sole proprietorship.[5] However, it is *540 unclear whether Lloyd L. Sztanyo held a controlling interest in Apollo Expediting.
Lloyd L. Sztanyo clearly was in effective control of all the organizations. The percentage of ownership of the various types of organizations which constitutes effective control is set forth in 26 C.F.R. § 11.414(c)-2(c)(2):
[P]ersons are in "effective control" of an organization if
(i) In the case of an organization which is a corporation, such persons own stock possessing more than 80 percent of the total combined voting power of all classes of stock entitled to vote of such corporation or more than 50 percent of the total value of shares of all classes of stock of such corporation;
(ii) In the case of an organization which is a trust or estate, such persons own an aggregate actuarial interest of more than 50 percent of such trust or estate;
(iii) In the case of an organization which is a partnership, such persons own an aggregate of more than 50 percent of the profits interest or capital interest of such partnership; and
(iv) In the case of an organization which is a sole proprietorship, such persons own such sole proprietorship.
Since Lloyd L. Sztanyo owned over 50% of each organization at the times pertinent to this case, he was in effective control of all of the defendant organizations.[6]
Having set forth the above conclusions of law, the Court finds that it cannot rule on the remainder of the motions for summary judgment at this time. On the basis of the information presently before it, the Court is unable to determine Lloyd L. Sztanyo's percentage interest in Apollo Expediting. The conflicting percentages submitted to this Court do not permit any conclusions to be drawn at present regarding whether the defendants and previous counter-defendants constitute a control group for withdrawal liability purposes. Therefore, the Court shall reserve judgment on both Central States and the defendants' summary judgment motions as to the common control issue raised in each. The Court shall allow the litigants until August 15, 1988 to present all information which may be pertinent to the resolution of this issue.
Central States also seeks the striking of defendants' affirmative defenses of laches, election of remedies, collateral estoppel due to a previous judgment, estoppel due to the absence of indispensable parties, and estoppel due to the actions of the parties and/or their representatives. A motion to strike is the appropriate way to challenge the propriety of an alleged affirmative defense. 5 C. Wright & A. Miller, Federal Practice and Procedure § 1278 (1969 and Supp.1987). Such a motion to strike should not be granted unless the defense is patently defective.
In accordance with the Court's discussion above, collateral estoppel due to a previous judgment does not exist in this case. That defense, number 2 in defendants' answer, shall be stricken. Additionally, defendants' affirmative defense number 3 shall be stricken. That defense alleges that Central States has waived its rights against the defendants due to its actions against the counter-defendants in Civil Action No. 83-3135. However, if defendants and the previous defendants are shown to be under common control, they are jointly and severally liable for the withdrawal liability. See Central Transport, Inc. v. Central States, 639 F.Supp. 788 (E.D.Tenn. 1986); Connors v. Calvert Development Co., 622 F.Supp. 877 (D.D.C.1985). A joint and several liability is one in which the creditor may sue one or more of the parties to the liability separately or together at the creditor's option. Black's Law Dictionary 972 (Rev. 4th ed. 1968). Accord, Detroit City Gas Co. v. Syme, 109 F.2d 366 (6th Cir.1940); MacMillan Bloedel, Ltd. v. Flintkote Co., 760 F.2d 580 (5th Cir.1985). No waiver of rights due to Central States' *541 actions in Civil Action No. 83-3135 can occur under these circumstances. Therefore, affirmative defense number 3 is appropriately stricken as it is not applicable under any circumstances.
Affirmative defense number 8 shall also be stricken. In that defense, defendants contend that they constituted indispensable parties to Civil Action No. 83-3135 under Fed.R.Civ.P. 19. However, an individual joint obligor is not an indispensable party to an action against one or more of the joint obligors. Cunard Line Ltd. v. Abney, 540 F.Supp. 657, 659 n. 3 (S.D.N.Y. 1982). Additionally, where a joint obligor is severally liable, that obligor is merely a proper party to an action, rather than a necessary party. Id.; Fed.R.Civ.P. 19(a) advisory committee note to 1966 amendment. Accordingly, if the defendants are commonly controlled with the previous counter-defendants, they were not indispensable or necessary parties to the previous action under Fed.R.Civ.P. 19.
The Court shall not strike defendants' affirmative defense number 6 which claims estoppel by laches. Laches may be an appropriate defense to a legal claim. See Harris v. Beynon, 570 F.Supp. 690, 692 (N.D.Ill.1983). To utilize the defense, defendants bear the burden of showing that there was a lack of diligence on Central States' part which prejudiced the defendants. Id. The Court is constrained from striking this defense because it is not clear how laches is being applied by the defendants or whether the defense is indeed patently defective.
Central States also seeks to have defendants' affirmative defense number 6 stricken. That defense asserts that Central States is equitably estopped from bringing this suit due to actions of the parties and/or their representatives. Once again, the Court cannot determine what this defense asserts. The parties' actions alluded to are not specified. Further, if, as Central States suggests, this defense is intended to hint at attorney misconduct, that matter is addressed in a motion by defendants which shall be ruled on separately by this Court. As it is unclear whether this defense as set forth by defendants is patently defective, the Court shall deny Central States' motion on this issue.
Although Central States has asserted in its motion that all affirmative defenses should be stricken, striking of all of those defenses is not appropriate at this time. Central States' motion to strike affirmative defenses shall be granted as to defendants' affirmative defenses numbered 2, 3, and 8, as set forth above. The motion to strike shall also be granted as to affirmative defenses numbered 1 and 7. These defenses allege, respectively, that Central States failed to state a cause of action on which relief could be granted, and that defendants did not conduct trades or businesses for ERISA purposes. As the Court has ruled that Central States has stated a cause of action for which relief can be granted and that the defendants did conduct trades or businesses, those affirmative defenses shall be stricken. As to the remaining affirmative defenses, numbered 4, 5, and 6, Central States' motion shall be denied. Defenses 5 and 6 have been discussed above, while affirmative defense number 4, alleging that no common control exists between the defendants and the previous counter-defendants, involves the issue reserved for later determination by the Court.
For the reasons set forth above,
IT IS HEREBY ORDERED that the Court shall reserve judgment on the issue of common control between the defendants and the counter-defendants in Civil Action No. 83-3135 pending the parties submission of all materials pertinent to that issue by August 15, 1988.
IT IS FURTHER ORDERED that defendants' motion for summary judgment is DENIED IN PART as to all issues except the common control issue.
IT IS FURTHER ORDERED that Central States' motion for summary judgment and to strike affirmative defenses is GRANTED IN PART on the issue of whether defendants were conducting trades or businesses and as to defendants' affirmative defenses 1, 2, 3, 7, and 8, and DENIED IN PART as to defendants' affirmative *542 defenses 4, 5, and 6. The remaining issues raised in Central States' motion shall be decided pending submission of materials pertinent to the common control issue.
NOTES
[1] ERISA is encoded at 29 U.S.C. § 1001, et seq.
[2] The admission was apparently based on a statement of business affairs executed by Lloyd A. Sztanyo as Chairman of the Board of Apollo Truck Lines. However, the statement of business affairs has not been presented to the Court. The Court is, therefore, unable to ascertain what significance the statement may have.
[3] See n. 4, infra, for a discussion of the various percentages of ownership which Lloyd L. Sztanyo has claimed to hold in Apollo Expediting, Inc.
[4] Defendants' response to Central States' motion for summary judgment and to strike affirmative defenses for the most part verifies their interrogatory answers. In ¶ 8 of their response, defendants make the following admission:

"Defendants admit that LLOYD L. SZTANYO owned one hundred (100%) percent of the stock of Apollo Truck Lines and Jordan Engineering, seventy (70%) percent of the stock of Apollo Expediting, and had the beneficial interest in LLOYD L. SZTANYO COMPANY, a sole proprietorship, LLOYD L. SZTANYO d/b/a LLOYD L. SZTANYO, a sole proprietorship, and the LLOYD L. SZTANYO TRUST."
The Court notes that the percentage of ownership of Lloyd L. Sztanyo held in Apollo Expediting, Inc. varies in the interrogatory response and the response to Central States' motion. Additionally, in his deposition taken on August 12, 1985, Mr. Sztanyo testified that he was an officer and a 100% shareholder in Apollo Truck Lines, Jordan Engineering and Consultants, and Apollo Expediting. This deposition, taken in Civil Action No. 83-3135, was filed as an exhibit to Central States' present motion.
[5] Lloyd L. Sztanyo's interest in each organization pursuant to 26 C.F.R. § 11.414(c)-2 is:

 Lloyd L.
Organization Type of Sztanyo's
 Name Organization Interest
 70% or
 75% or
Apollo Expediting Corporation 100%
Apollo Truck Corporation 100%
 Lines
Jordan Engineering Corporation 100%
 and
Consultants
Lloyd L. Sztanyo Co-partnership 100%
 Co.
Lloyd L. Sztanyo Sole proprietorship 100%
 Co.
Lloyd L. Sztanyo Sole proprietorship 100%
 d/b/a
Lloyd L. Sztanyo
Lloyd L. Sztanyo Trust 100%
 Trust

[6] The Court notes that it has been supplied with no information regarding possible attribution of Apollo Expediting stock to Lloyd L. Sztanyo under 26 C.F.R. § 11.414(c)-4(b). Since Lloyd L. Sztanyo was in effective control of Apollo Expediting, the attribution regulations apply.