CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, et al., Plaintiffs,

v.

Larry A. HAYES, et al., Defendants.

No. 91 C 3272.

United States District Court, N.D. Illinois, E.D.

March 25, 1992.

---

MEMORANDUM OPINION

GRADY, District Judge.

This action, for the collection of assessed withdrawal liability under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1368, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381–1461, comes before the court on the motion of defendants Larry A. Hayes and Katrina O. Hayes d/b/a Chicago Heights Leasing to dismiss Count I of plaintiffs' complaint, and plaintiffs' cross motion for summary judgment. The court denies defendants' motion and grants plaintiffs' motion.

FACTS

During the relevant time period, defendants, Larry A. Hayes and Katrina O. Hayes (collectively the "Hayes"), were the owners and operators of a tractor/trailer sole proprietorship d/b/a Chicago Heights Leasing ("CHL"). During 1982, Larry A. Hayes and (by spousal attribution) Katrina O. Hayes owned 100 percent of the stock of Lincoln Transfer Company, Inc. ("Lincoln").[1] Lincoln was party to a collective bargaining agreement—executed between itself and various Teamsters local units—under which Lincoln was required to make contributions to plaintiffs, Central States, Southeast and Southwest Areas Pension Fund (the "Fund"), for employees falling under the terms of that agreement.

During June of 1982, Lincoln's contractual obligation to contribute to the Fund ended and it ceased making contributions, and no other Lincoln Controlled Group member continued contributing to the Fund. Thus, the Fund treated this cessation as a "complete withdrawal" from the Fund, as defined in § 4203 of the MPPAA, 29 U.S.C. § 1383, and assessed the Group's withdrawal liability. In April of 1985, the Fund issued a notice and demand to the Lincoln Controlled Group for payment of withdrawal liability in accordance with §§ 4202(2) and 4219(b)(1), 29 U.S.C. §§ 1382 and

William W. Leathem, Terence G. Craig, Rosemont, Ill., for plaintiffs.

Steven M. Bazer, Chicago, Ill., for defendants.

1. Pursuant to § 4001(b)(1) of the MPPAA, 29 U.S.C. § 1301(b)(1), CHL, Lincoln and certain other parties mentioned below which were under common control with CHL and Lincoln (collectively the "Lincoln Controlled Group"), are treated as a single employer for purposes of calculating and assessing withdrawal liability under Title VI of the MPPAA.

1399(b)(1). During July of 1985, the Fund issued a past due notice and demand for payment of the assessed amount pursuant to § 4219(c)(5)(A), 29 U.S.C. § 1399(c)(5)(A), which, among other things, warned the employer of the consequences of its failure to pay such liability.

Neither the Lincoln Controlled Group nor any of its members initiated arbitration to dispute this assessment within the time period prescribed by § 4221(a)(1), 29 U.S.C. § 1401(a)(1); yet they failed (and to this day, have failed) to pay any portion of the assessment. The Fund argues that the Group is in default and the full amount of the assessment is now due and owing. *See* § 4219(c)(5), 29 U.S.C. § 1399(c)(5).

In 1988, the Fund filed suit to collect the outstanding assessment against defendants, Midland Transport, Inc. n/k/a Midwest Transport, Inc. and Joyce Trucking, Inc. ("Joyce"), which were both members of the Lincoln Controlled Group.[2] Summons for both defendants was personally served on Larry A. Hayes, who was then the president of both businesses.[3] In July of 1989, the United States District Court for the Northern District of Illinois entered a consent judgment against the above parties as members of the Lincoln Controlled Group. *See Central States, Southeast and Southwest Areas Pension Fund v. Midland Transport, Inc. and Joyce Trucking, Inc.,* No. 88–5526, slip op. (N.D.Ill. July 13, 1989) (Rovner, J.). Apparently, neither Midland n/k/a Midwest Transport, Inc. nor Joyce has paid the judgment in that action.

Midwest Transport, Inc. n/k/a Midland Transport, Inc. began business in March of 1989. Then in December of 1990 (after the consent judgment was entered in the above mentioned case), Midland Transport, Inc. ("Old Midland") (defendant in the prior action) changed its name to Midwest Transport, Inc., and Midwest Transport, Inc. changed its name to Midland Transport, Inc. ("New Midland") (one of the defen-

dants herein). Katrina Hayes owns 100 percent of the stock of New Midland and Larry Hayes is the president and treasurer.

The Fund asserts that the day after Old Midland ceased its operations, New Midland took over. Specifically, the Fund offers the testimony of Larry Hayes taken during a sworn Citation to Discover Assets, to establish that, beginning on October 1, 1990, defendant New Midland operated from the same business premises; employed many of the same employees; serviced many of the same customers; operated with the same equipment; and paid business obligations and employee salaries from the same account(s), as Old Midland. Even though New Midland conducted business (and held itself out to the public) as Midwest Transport, Inc. after October 1, 1990, it did not officially change its business name until the middle of December of that same year.

After being unable to collect from either Old Midland or Joyce, the Fund filed the present two count complaint seeking recovery from both CHL and New Midland of the full amount of the assessed withdrawal liability. Count I alleges that CHL was a member of the Lincoln Controlled Group and, therefore, is jointly and severally liable with its co-members for the full amount of the assessed liability. In addition to the withdrawal liability, the Fund requests the court to require CHL to pay interest, costs, attorney's fees, and liquidated damages pursuant to § 502(g)(2), 29 U.S.C. § 1132(g)(2). Count II alleges that defendant New Midland is the successor to Old Midland—which was a member of the Lincoln Controlled Group against which a judgment of withdrawal liability has been entered—and (the Fund argues) that as successor to Old Midland, New Midland is liable for its predecessor's withdrawal liability.

CHL now moves to dismiss Count I of the Fund's complaint on the ground that,

---

**2.** Lincoln was not named as a party to this action because it had filed for protection under Chapter 11 of the Bankruptcy Code in December of 1982. *See In re: Lincoln Transfer Com-* *pany, Inc.,* No. 382–01716 (Bankruptcy C.D.Ill. 1982).

**3.** Katrina O. Hayes owns 100 percent of Midland's stock.

because it was not joined as a party in the first collection proceeding against members of the Lincoln Controlled Group, the Fund is now barred by res judicata and/or collateral estoppel from bringing a withdrawal liability action against it. The Fund moves for summary judgment on both counts. The court will consider each motion in turn.

DISCUSSION

I. CHL's Motion to Dismiss

■■■ The court must accept the facts alleged in the plaintiff's complaint as true and must draw all reasonable inferences from the pleadings in plaintiff's favor when considering a motion to dismiss. *See Gillman v. Burlington N. R.R. Co.*, 878 F.2d 1020, 1022 (7th Cir.1989). Dismissal is appropriate " 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Kunik v. Racine County*, 946 F.2d 1574, 1579 (7th Cir.1991) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984)).

As stated previously, CHL argues that, because it was not made party to the earlier collection action against two other members of the Lincoln Controlled Group, the Fund is now either collaterally estopped or barred by the doctrine of res judicata from asserting the present collection claim against it. CHL is in essence arguing that it was a necessary and indispensable party to the earlier proceeding, and that the Fund knew that it was such a party, yet failed to join it in that action; it frames this argument, however, as a res judicata defense to the present action. The Fund denies knowing, or being reasonably able to learn, that CHL was part of the controlled group in question—because of the nature of CHL's business—until after the earlier claim had been litigated and judgment was entered. For purposes of ruling on the present motion, the court must accept the allegations of the complaint as true and, on that basis, the court agrees with the Fund that CHL's

res judicata and collateral estoppel arguments are without merit.

The defendant correctly points out the premise upon which res judicata is based:

> The principle of res judicata ... treats a judgment on the merits as an absolute bar to relitigation *between the parties and those in privity with them* of every matter offered and received to sustain or defeat the claim or demand and to every matter which might have been received for that purpose.

*Martino v. McDonald's System, Inc.*, 598 F.2d 1079, 1083 (7th Cir.1979) (citations omitted; emphasis added), *cert. denied*, 444 U.S. 966, 100 S.Ct. 455, 62 L.Ed.2d 379 (1979). CHL argues that the Fund itself acknowledges (in its complaint) that CHL was in privity with Lincoln and other Lincoln Controlled Group members at the time of Lincoln's withdrawal from the Fund. The Fund disputes this characterization of the assertions made in its complaint, but does not argue that CHL was not in privity with Lincoln. Even if CHL was in privity with Lincoln at the time of the latter's withdrawal from the Fund, so that res judicata were applicable to the present claim, the court fails to see how the doctrine would aid CHL; if anything, the doctrine would preclude the court from relitigating the question of CHL's liability, and this action would be reduced to a matter of enforcing the judgment obtained by the Fund in the earlier action against CHL's privies.[4] *See generally Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1877) (discussing the effect of res judicata on subsequent litigation). Because res judicata would not help CHL and because CHL has not raised any other defense to the imposition of withdrawal liability on it as a member of the Lincoln Controlled Group, it is jointly liable for the controlled group's assessment if, on the merits of the present action, it is in fact a member. Therefore, it is not necessary for

---

**4.** Res judicata bars relitigation of the same cause of action between the same parties (or those in privity with them) where there is a final judgment, whereas collateral estoppel bars relitigation of a particular issue or determina-

tive fact. *See Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308. CHL's collateral estoppel argument would lead to the same result and is thus equally unavailing to CHL.

the court to resolve the question of whether CHL was in privity with Lincoln.

■ Under 29 U.S.C. § 1301(b)(1), members of a controlled group constitute a "single employer" and are all jointly and severally liable for the entire amount of the withdrawal liability assessment. As a creditor, the Fund is not required to sue all of the controlled group members in one action or lose its rights against unjoined parties; it may even sue each member separately if it elects to. *See Central States, Southeast and Southwest Areas Pension Fund v. Lloyd L. Sztanyo Trust,* 693 F.Supp. 531, 540, *See also Board of Trustees of Western Conference of Teamsters Pension Trust Fund v. H.F. Johnson, Inc.,* 830 F.2d 1009, 1013 (9th Cir.1987) (controlled group members discovered after Fund's unsuccessful attempts at collecting prior withdrawal liability judgment against fellow members remain jointly liable and may be sued for full amount of Fund trustee's assessment). Thus, this is not merely a supplementary action brought by the Fund to enforce the earlier judgment to which CHL was not a party: the Fund is suing CHL on the theory that it is a Lincoln Controlled Group member and is therefore jointly liable for its withdrawal assessment.

Defendant CHL's motion to dismiss Count I is denied.

## II. The Fund's Summary Judgment Motion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact exists only where 'there is sufficient evidence favoring the nonmoving party for the jury to return a verdict for that party.'" *Dribeck Importers, Inc. v. G. Heileman Brewing Co.,* 883 F.2d 569, 573 (7th Cir.1989) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986)). In considering such a motion, the court must view all inferences in the light most favorable to the party opposing the motion. *See Regner v. City of Chicago,* 789 F.2d 534, 536 (7th Cir. 1986). Once the moving party has supported its motion, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings." Fed. R.Civ.P. 56(e). The adverse party's response, by deposition, affidavit or otherwise, "must set forth specific facts showing that there is a genuine issue for trial." *Id.*

In support of its motion, the Fund offers the affidavit of Thomas J. Frawley, a withdrawal liability assessor with the Fund, and excerpts of testimony given under oath by Larry A. Hayes during a Citation To Discover Assets. The Fund further offers the minutes of the annual meeting of the board of directors of New Midland, which are signed by both Mrs. and Mr. Hayes. In response, the defendants offer nothing except their assertions and counter-allegations, and arguments against the use the Fund's submissions because they are unsuitable under Rule 56(c). The Fund also filed a Statement of Undisputed Material Facts to which defendants failed to respond. Pursuant to Local Rule 12(n), all of these material facts are deemed admitted. Because defendants have not produced any of the types of materials required by Rule 56, and the court finds the Fund's submissions to be of the type called for by that rule, defendants have failed to show the existence of any disputed material facts for which a trial would be necessary to resolve. *See Atchison, Topeka and Santa Fe Railway Co. v. United Transportation Union,* 734 F.2d 317, 320 (7th Cir.1984). Therefore, the only question remaining is, on the undisputed facts is the Fund entitled to judgment as a matter of law? Inasmuch as the Fund's complaint is divided into two counts, each being based on a different legal premise and against a different defendant, this question must be answered in two parts.

## A. *Count I and CHL*

■ After the Lincoln Controlled Group withdrew from the Fund, the Fund determined the amount of the Group's withdrawal liability, notified Lincoln of the schedule for liability payments and demanded payment in accordance with the schedule. *See* §§ 4202 and 4219(b)(1), 29 U.S.C. §§ 1382 and 1399(b)(1). Notice to one member of a controlled group of a withdrawal liability assessment constitutes notice to every member of the group. *See Trustees of Chicago Truck Drivers v. Central Transport, Inc.,* 888 F.2d 1161, 1163 (7th Cir. 1989). Moreover, the Fund personally served Larry A. Hayes a copy of the summons and complaint in the earlier lawsuit against Old Midland and Joyce. All of these things in combination lead to the inescapable conclusion that CHL had notice of the liability assessment made against the Lincoln Controlled Group.

■ Despite sufficient notice, neither CHL nor any other Lincoln Controlled Group member initiated arbitration to dispute the assessment made against them. Under § 4221(a)(1), 29 U.S.C. § 1401(a)(1), "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 4201 through 4219 of this title ... shall be resolved through arbitration." If the proper parties do not initiate arbitration in time, "the amounts demanded by the plan sponsor ... shall be due and owing on the schedule set forth by the plan sponsor." 29 U.S.C. § 1401(b)(1). Because CHL did not request arbitration within the time limit set forth in 29 U.S.C. § 1401(a)(1), "it has waived any defenses it may have raised. Inasmuch as Congress made it mandatory to resolve withdrawal liability disputes between an employer and the plan sponsor through arbitration ... [CHL] cannot bypass arbitration and litigate a defense to a withdrawal liability claim." *Robbins v. Chipman Trucking, Inc.,* 866 F.2d 899, 902 (7th Cir.1988) (citation omitted). Moreover, even if CHL had not waived its defenses by failing to arbitrate, it would not alter the outcome of this opinion. CHL apparently does not dispute that it is a member of the Lincoln Controlled Group. The only defense CHL raises to plaintiffs' claim is that it should have been sued along with Old Midland and Joyce in the earlier proceeding and, therefore, the present action is barred by res judicata. And the court has already rejected that argument for reasons delineated above. *See* Discussion, Part I.

Therefore, the court grants the Fund's motion for summary judgment against CHL on Count I.

## B. *Count II and New Midland*

The Fund seeks to hold New Midland liable for the Lincoln Controlled Group withdrawal assessment on a "successor liability" theory. The Supreme Court has held that whether a new employer is the successor of an old employer depends on whether there is a "substantial continuity" between the two businesses. *See Fall River Dyeing & Finishing Corp. v. NLRB,* 482 U.S. 27, 43, 107 S.Ct. 2225, 2236, 96 L.Ed.2d 22 (1987):

> This approach, which is primarily factual in nature and is based upon the totality of the circumstances of a given situation, requires that ... the new company has "acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations." Under this approach, the [court] examines a number of factors: whether the business of both employers is essentially the same; whether the employees of the new company are doing the same jobs in the same working conditions under the same supervisors; and whether the new entity has the same production process, produces the same products, and basically has the same body of customers.

*Id.* (citations omitted); *see also Upholsterer's Int'l Union Pension Fund v. Artistic Furniture of Pontiac,* 920 F.2d 1323, 1329 (7th Cir.1990).

The successor liability doctrine is an exception to the general common law rule that " 'a corporation that merely purchases for cash the assets of another corporation does not assume the seller corporation's

liabilities.' " *Artistic Furniture,* 920 F.2d at 1325 (quoting *Travis v. Harris Corp.,* 565 F.2d 443, 446 (7th Cir.1977)). Successor liability was first developed in the context of the National Labor Relation Act and was subsequently extended to actions brought under 42 U.S.C. § 1981, Title VII, and, most importantly for the purposes of this case, the MPPAA. *See e.g., Golden State Bottling Co. v. NLRB,* 414 U.S. 168, 182 n. 5, 94 S.Ct. 414, 424 n. 5, 38 L.Ed.2d 388 n. 5 (1973) (NLRA); *Musikiwamba v. ESSI Inc.,* 760 F.2d 740, 746 (7th Cir.1985) (Section 1981); *Wheeler v. Snyder Buick, Inc.,* 794 F.2d 1228 (7th Cir.1986) (Title VII); *Artistic Furniture,* 920 F.2d at 1327 (MPPAA). In applying successor liability to an action seeking recovery of delinquent multiemployer pension fund contributions, the Seventh Circuit found the doctrine

> to be appropriate in those cases where the vindication of an important federal statutory policy has necessitated the creation of an exception to the common law rule, where the successor has had prior notice of the liability in question, and where there has existed sufficient evidence of continuity of operations between the predecessor and successor.

*Artistic Furniture,* 920 F.2d at 1327. This court agrees with the Fund that the reasoning of *Artistic Furniture* for applying successor liability analysis in contribution cases applies with equal force to actions seeking recovery of unpaid MPPAA withdrawal liability.

■ The court agrees with the Fund that, under the totality of the circumstances, New Midland is Old Midland's successor. New Midland operates the same type of business as Old Midland; renders the same services in the same manner; operates from the same business premises as Old Midland; employs Old Midland employees in the same capacities;[5] uses Old Midland's trucks; and delivers to most of Old Midland's customers. Two additional facts also support the court's conclusion: (1) New Midland conducted business, and held itself out to the public, as Old Midland

for at least the first two months of its operations; and (2) New Midland continued to use Old Midland's bank account to pay employee salaries and other business expenses.

*Artistic Furniture* strongly suggests in dicta that the policies underlying the withdrawal liability provisions of the MPPAA support the imposition of successor liability in the present case:

> Congress enacted the statutes imposing withdrawal liability in order to "relieve the funding burden on remaining employers" and to "avoid creating a severe disincentive to new employers entering the plan...." House Report, Part I, at 67, reprinted in 1980 U.S.Code Cong. and Admin.News 2918, 2935. *See also* House Report, Part II, at 15, reprinted in 1980 U.S.Code Cong. & Admin.News 2993, 3004. Congress also sought to prevent the creation of funding deficiencies which in the future might necessitate the infusion of Pension Benefit Guarantee Corporation (PBGC) insurance funds to cover shortfalls and hence would burden the large number of employers that support the PBGC through the premiums they pay. *See* House Report, Part II, at 15.

*Id.* at 1328–29. These policies support the imposition of withdrawal liability on New Midland as the successor of Old Midland, if the other prerequisites to such liability have been met. The court thinks they have: New Midland had sufficient notice of Old Midland's liability through one of its officers, Larry A. Hayes, and the undisputed facts lead to the conclusion that there was more than just a mere "continuity of operations" between Old and New Midland; for these two businesses were essentially the same.

Accordingly, the court grants the Fund's motion for summary judgment against New Midland on Count II.

### III. Interest, Liquidated Damages and Attorneys' Fees

In addition to the principal amount of its withdrawal liability assessment, the Fund

---

5. "Continuity of work force is a major consideration in successorship cases." *Trustees For Alaska Laborers v. Ferrell,* 812 F.2d 512, 516 (9th Cir.1987) (citations omitted).

requests interest on the delinquent withdrawal liability, as well as an amount equal to the greater of interest on the unpaid assessment or liquidated damages, reasonable attorneys' fees, and costs, pursuant 29 U.S.C. § 1132(g). Section 1132(g) deals with awards in actions to collect *delinquent contributions*, and provides:

(2) In any action under this subchapter by a fiduciary ... on behalf of a plan [to collect delinquent contributions under § 1145] in which a judgment in favor of the plan is awarded, the court shall award the plan—

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent ... of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant. . . .

For purpose of this paragraph, interest on unpaid contributions shall be determined by using shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g).

The Third Circuit has held that in a successful action for collection of delinquent withdrawal liability payments, § 1132(g) relief is mandatory. *See United Retail & Wholesale Employees Teamsters Union Local 115 Pension Plan v. Yahn & McDonnell, Inc.*, 787 F.2d 128 (3rd Cir. 1986), *affd. per curium by an equally divided vote sub nom*, 481 U.S. 735, 107 S.Ct. 2171, 95 L.Ed.2d 692 (1987). *Accord Operating Engineers Pension Trust v. Reed*, 726 F.2d 513, 514 (9th Cir.1984); *O'Hare v. General Marine Transport Corp.*, 740 F.2d 160, 171 (2d Cir.), *cert. denied*, 469 U.S. 1212, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1984); *Carpenters Amended and Restated Health Ben. Fund v. John W. Ryan Construction Co.*, 767 F.2d 1170

(5th Cir.1985). The *Yahn & McDonnell* court reasoned that

Section 1451(b) [of Title 29] provides that failure to make withdrawal liability payments shall be treated as delinquency in contribution within the meaning of § 1145. Thus, the Plan's suit in district court was an action to enforce a delinquent contribution under § 1145.

787 F.2d at 134.

■ The Seventh Circuit has not addressed this issue yet, but recently held *en banc* that an award of interest, attorneys' fees, costs, and liquidated damages, is mandatory in successful actions brought under § 1145 for collection of *delinquent contributions*. *See Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Serv. Inc.*, 870 F.2d 1148, 1156 (7th Cir.1989) (language of § 1132(g) is mandatory). This court agrees with the reasoning of the Third Circuit in *Yahn & Mcdonnell*, especially in the absence of a definitive holding by the Seventh Circuit to the contrary, and holds that the prayed for additional relief is mandatory in the context of *delinquent withdrawal liability* as well.

CONCLUSION

The motion of defendants, Larry A. Hayes and Katrina O. Hayes d/b/a Chicago Heights Leasing, to dismiss Count I is denied. Plaintiffs' motion for summary judgment against defendants, Larry A. Hayes and Katrina O. Hayes d/b/a Chicago Heights Leasing, and New Midland is granted. The court also grants the Fund's request for interest, attorneys' fees, costs, and liquidated damages, and directs the Fund to submit petitions for such expenses, with supporting affidavits, by April 15, 1992. Defendants may have until May 4, 1992, to respond on the reasonableness of the amounts requested, and the Fund may have until May 18, 1992, to reply. A judgment will then be entered for the total amount found owing.