CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, an employee benefit plan, and Howard McDougall, a representative Trustee, Plaintiffs,

v.

Walter BAY, d/b/a Walter Bay, Carolyn Bay, d/b/a Carolyn Bay, and Lakeshore Properties, d/b/a Lakeshore Properties, a Michigan partnership, Defendants.

Civ. A. No. 88–70392.

United States District Court,
E.D. Michigan, S.D.

May 6, 1988.

Douglas A. Firth, Russell N. Luplow, P.C., Bloomfield Hills, Mich., for plaintiffs.

A.T. Lippert, Jr., Smith & Brooker, P.C., Saginaw, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

FEIKENS, District Judge.

This is a suit for interim withdrawal liability [1] payments in accordance with provisions of the Employee Retirement Income Security Act of 1974 (ERISA) (as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA)), 29 U.S.C.

---

1. "Withdrawal liability" refers to a contributing employer's share of the unfunded vested benefit liability in a multiemployer pension plan at the time the employer's obligation to contribute ceases. 29 U.S.C. §§ 1381(b), 1382 and 1391(b)–(d).

§§ 1001–1461.[2] The parties have filed cross-motions for summary judgment.

Plaintiffs are a multiemployer pension fund and its trustee, as defined in 29 U.S.C. § 1301(a)(3).

Defendants are trades and businesses allegedly under common control[3] of Walter Bay with a contributing employer, St. Louis Freight Lines, Inc.,[4] which withdrew from the pension fund and became subject to withdrawal liability on December 31, 1984.

The facts are straightforward and well documented. Based upon the motions and briefs of the parties in this matter and the companion case, *Tri–State Rubber & Equipment, Inc., et al. v. Central States Southeast & Southwest Areas Pension Fund, et al.*, Case No. 86–70091, and after hearing oral argument on April 25, 1988, I make the following findings.

On September 25, 1985, Notice and Demand for Payment of withdrawal liability was sent to seven members of the controlled group treated as a single employer with St. Louis Freight Lines, Inc. (*See* fn. 4, *supra*, for identification.)

The seven members of the controlled group and St. Louis Freight Lines, Inc. were owned in common and controlled by Walter Bay. (*See* fn. 4, *supra*.)

Lakeshore Properties, a Michigan partnership, was formed on October 5, 1977 by Walter Bay (30% interest), C.J. Davis (30%), Thomas Webber (30%), and Jack Umphrey (10%). (Partnership Agreement, plaintiffs' exhibit 4). The interests held by the parties represented both profits and capital interests. (*Ibid.*, ¶¶ 4–5.)

Bay purchased Davis' thirty percent interest on June 29, 1982. (Assignment of Partnership Interest Agreement, plaintiffs' exhibit 7.)

Bay purchased Webber's thirty percent interest on July 1, 1982. (Quit–Claim Deed, plaintiffs' exhibit 8.)

Bay exercised control over Umphrey's ten percent interest following Umphrey's death in 1978.[5] Bay formally acquired Um-

---

**2.** Specifically, plaintiffs' action is brought under 29 U.S.C. §§ 1132 (civil enforcement), 1381(a) (withdrawal liability established), 1382 (determination and collection of liability; notification of employer), 1399 (notice, collection, etc., of withdrawal liability) and 1451 (civil actions for payment of withdrawal liability).

**3.** Under regulations prescribed by the Pension Benefit Guaranty Corporation (PBGC), "trades or businesses under common control" are treated as a "single employer" for purposes of withdrawal liability pursuant to ERISA. 29 U.S.C. § 1301(b)(1). PBGC regulations are coextensive with regulations prescribed by the Secretary of the Treasury under 26 U.S.C. § 414(c), which specifically provides for partnerships and proprietorships under common control. 29 C.F.R. § 2612.2 (1987).

"An individual who owns the entire interest in an unincorporated trade or business is treated as his own employer, and a partnership is treated as the employer of each partner who is an employee...." 29 U.S.C. § 1301(b)(1). Within the definition of "trades or businesses under common control" are "brother-sister groups." 26 C.F.R. § 11.414(c)–2(a), (c), and (d).

A "brother-sister" group exists when the same five or fewer persons own a controlling interest in each trade or business and those persons are in effective control of each trade or business. 26 C.F.R. § 11.414(C)–2(c)(1).

A "controlling interest" means ownership of at least 80 percent of the profits or capital interest of a partnership and complete ownership of a sole proprietorship. 26 C.F.R. § 11.414(c)–2(b)(2)(i)(C) and (D).

"Effective control" means ownership of at least 50 percent of the profits or capital interest of a partnership and complete ownership of a sole proprietorship. 26 C.F.R. § 11.414(c)–2(c)(2)(iii) and (iv).

**4.** In my Opinion issued December 9, 1987, in a consolidated matter, *Tri–State Rubber & Equipment, Inc., et al. v. Central States Southeast & Southwest Areas Pension Fund, et al.*, Case No. 86–70091, I found the following entitles controlled by Walter Bay and subject to treatment as a single employer with St. Louis Freight Lines, Inc. on the date of withdrawal, December 31, 1984: (1) Tri–State Rubber & Equipment, Inc.; (2) General Investment Corp.; (3) Tandem Transportation Corp.; (4) Arrow Leasing Corp.; (5) Arrow Transportation Co.; (6) Transport Investment Corp.; and (7) Tri–State Equipment, Inc.

*Tri–State Rubber & Equipment, supra*, is in arbitration; the arbitrator has found liability for payments and now must determine the amount.

**5.** The Partnership Agreement, at ¶ 14, provided that "immediately upon the death of any of the partners, the surviving partners shall be deemed to have purchased the interest of the deceased partner," plaintiffs' exhibit 4.

phrey's interest on December 15, 1986. (Assignment of Partnership Interest Agreement with Diane Umphrey, plaintiffs' exhibit 9.)

■ Thus, as of the date of withdrawal, Bay owned and controlled at least ninety percent of the profit and capital interests in Lakeshore Properties. Lakeshore Properties is, therefore, properly included as a member of a controlled group comprised of the other entities so owned and controlled by Bay. (See "controlled trades and businesses" defined and identified in fns. 3–4, supra.)

■ Walter and Carolyn Bay operated a leasing arrangement as a sole proprietorship, which is includable as a member of the controlled group [6] as it was owned and controlled by Walter Bay as of December 31, 1984. (See fns. 3–4, supra.)

The Bays purchased property, located at 1000 Michigan Avenue, St. Louis, Michigan, from the estate of C.J. Davis on June 29, 1982. (Warranty Deed, plaintiffs' exhibit 13.) The offices of St. Louis Freight Lines, Inc., as well as Tri–State Equipment, Inc., were located on this property. The Bays' property was leased, therefore, to or for the benefit of other members of the controlled group.

The Bays reported rental income from the lease of the St. Louis, Michigan property and other commercial property on Schedule E to Form 1040 of their federal income tax return filed for 1984. (Bays' 1984 Tax Return, plaintiffs' exhibit 15.)

■ Walter Bay is deemed thus to completely own and control the sole proprietorship leasing arrangement through application of mandatory [7] rules of attribution, although both Bay and his wife Carolyn have legal interests in the proprietorship.[8] (Likewise, Carolyn Bay is deemed to completely own and control by attribution the interests of her husband. See fn. 8, supra.)

Accordingly, the sole proprietorship leasing arrangement operated by the Bays is properly includable in the controlled group since the proprietorship was completely owned and controlled by Walter Bay on the date of withdrawal, December 31, 1984.

Neither Lakeshore Properties nor the sole proprietorship leasing arrangement operated by the Bays was included in the original, and now companion, case, Tri–State Rubber & Equipment, Inc., et al. v. Central States Southeast and Southwest Areas Pension Fund, et al., Case No. 86–70091, for good reasons. Information concerning the existence of the entities on the date of withdrawal, December 31, 1984, has been only recently discovered by plaintiffs. Defendants have not demonstrated a lack of good faith on the part of plaintiffs in bringing this second action so as to preclude it.

The companion case to this matter, Tri–State Rubber & Equipment, Inc., et al. v. Central States Southeast and Southwest Areas Pension Fund, et al., Case No. 86–70091, is now in arbitration following limited litigation. (See fn. 4, supra.) Bay, as owner and controller of the entities comprising the controlled group in the companion case, has been intimately involved in the proceedings here and the arbitration of

6. A sole proprietorship leasing arrangement clearly constitutes a trade or business includable in a controlled group for purposes of withdrawal liability. See, e.g., Board of Trustees of the Western Conference of Teamsters Pension Trust Fund v. LaFrenz, 837 F.2d 892 (9th Cir. 1988); Board of Trustees of the Western Conference of Teamsters Pension Trust Fund v. H.F. Johnson, Inc., 830 F.2d 1009 (9th Cir.1987); United Food and Commercial Workers Union v. Progressive Supermarkets, 644 F.Supp. 633 (D.N.J.1986); and Pension Benefit Guaranty Corporation v. Center City Motors, Inc., 609 F.Supp. 409 (S.D.Cal.1984). See also Central States Pension Fund v. Skyland Leasing Co., —— F.Supp. ——, Slip op., Case No. G–84–232 CA1 (W.D.Mich.

November 23, 1987), and Central States Pension Fund v. Wayne E. Long, —— F.Supp. ——, Slip op., Case No. 86–73226 (E.D.Mich. January 20, 1987).

7. See 26 C.F.R. § 11.414(c)–4(a).

8. Regulations at 26 C.F.R. § 11.414(c)–4(b)(5)(i) generally provide that "an individual shall be considered to own an interest owned, directly or indirectly, by or for his or her spouse, other than a spouse who is legally separated from the individual under a decree of divorce, whether interlocutory or final, or a decree of separate maintenance."

that case. The arbitrator's decision is reviewable on appeal. Thus, that Bay and the partnership in which he has sole interest, Lakeshore Properties, will join that arbitration in progress as members of the controlled group is of no moment.[9]

The issue before me on the parties' cross-motions for summary judgment is whether or not defendants, as members of the controlled group with St. Louis Freight Lines, Inc. (*see* fn. 4 for previously-determined members of the control group), are liable for interim payments of the withdrawal liability.

Interim payments of withdrawal liability are statutorily required under ERISA provisions:

> Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor under subsection (b)(1) of this section beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determination of the amount of such liability or of the schedule.

29 U.S.C. § 1399(c)(2). The provision for interim payments pending any "review of appeal" includes interim payments pending arbitration.

> Payments shall be made by an employer in accordance with the determinations made under this part until the arbitrator issues a final decision with respect to the determination submitted for arbitration, . . . .

29 U.S.C. § 1401(d).

Defendants assert that they cannot be held liable for interim payments as they received no notice of withdrawal liability from plaintiff pension fund as required under ERISA. In support of their argument, defendants cite 29 U.S.C. § 1399(b) which provides:

(b) Notification, demand for payment, and review upon complete or partial withdrawal by employer

(1) As soon as practicable after an employer's complete or partial withdrawal, the plan sponsor shall—

(A) notify the employer of—

(i) the amount of the liability, and

(ii) the schedule for liability payments, and

(B) demand payment in accordance with the schedule.

(2)(A) No later than 90 days after the employer receives the notice described in paragraph (1), the employer—

(i) may ask the plan sponsor to review any specific matter relating to the determination of the employer's liability and the schedule of payments,

(ii) may identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer, and

(iii) may furnish any additional relevant information to the plan sponsor.

(B) After a reasonable review of any matter raised, the plan sponsor shall notify the employer of—

(i) the plan sponsor's decision,

(ii) the basis for the decision, and

(iii) the reason for any change in the determination of the employer's liability or schedule of liability payments.

■ Defendants argue, in effect, that only St. Louis Freight Lines, and the other seven entities comprising the controlled group (*see* fn. 4, *supra* for identification) who received copies of the Notice and Demand for Payment on September 25, 1985, actually received sufficient notice under the statute. Because separate documents were not served on all members of the controlled group (*i.e.*, defendants), those not served cannot be held liable for interim payments with their brother-sister entities

---

**9.** As noted in *IUE AFL–CIO Pension Fund, et al. v. Barker & Williamson, Inc., et al.*, 788 F.2d 118, 129 (3rd Cir.1986), if an entity knowingly chooses not to participate in an action and arbitration regarding withdrawal liability of a controlled group

it gambles that it will not later be found to be a member of [the] controlled group with the withdrawn employer. It also risks losing the possibility of review and arbitration and risks default. . . . When [an entity] chooses this . . . course the result, though seemingly harsh, is but a self-inflicted wound.

who were afforded the procedural protection of ERISA. Defendants so interpret 29 U.S.C. § 1399(b). This interpretation is clearly contrary to the legislative intent of Congress in drafting the statute and the caselaw interpreting the use of this provision. All members of a commonly controlled group are to be regarded as one employer (29 U.S.C. § 1301(b)(1)) and treated as such for purposes of determining withdrawal liability under ERISA. (*See* fn. 3, *supra.*) The effect of single employer treatment is well summarized in *Connors, et al. v. Calvert Development Co., et al.,* 622 F.Supp. 877 (D.D.C.1985). That court concluded that each member of the controlled group is jointly and severally liable for payment of withdrawal liability whether or not more than one member was served with a Notice and Demand for Payment. *Id.* at 881 (*citing PBGC v. Ouimet Corp.,* 630 F.2d 4, 11 (1st Cir.1980) *cert. denied,* 450 U.S. 914, 101 S.Ct. 1356, 67 L.Ed.2d 339 (1981) and *cert. denied,* 464 U.S. 961, 104 S.Ct. 393, 78 L.Ed.2d 337 (1983)).

> The requirement that members of a controlled group, such as defendants, be treated as a single employer means that plan trustees can operate as if defendants were one entity. In this respect, the preamble to the regulation, entitled "Notice and Collection of Withdrawal Liability," 49 Fed.Reg. 22,642–22,644 (May 31, 1984) (codified at 29 C.F.R. § 2644), states:
>
> > [U]nder ERISA there is a unity of interest in the case of a controlled group of corporations, since the entire group is considered to be a single employer for withdrawal liability and other purposes. Therefore, PBGC believes that a notice of default sent to the contributing entity which is a member of a controlled group of corporations, within the meaning of Section 4001(b)(1) [29 U.S.C. § 1301(b)(1) ], constitutes constructive notice to the other members of the same controlled group. Thus, PBGC finds that Section 4219(c)(5)(A) [29 U.S.C. § 1399(c)(5)(A) ] does not require notice to the other members of a controlled group.

The Court finds this reasoning consistent with the legislative history of the MPPAA. Senator Williams, one of the principal sponsors of both ERISA and MPPAA stated:

> Under the current law, a group of trades or businesses under common control, whether or not incorporated, is treated as a single employer for purposes of employer liability under Title IV. Thus, if a terminating single employer plan is maintained by one or more members of a controlled group, the entire group is the "employer" and is responsible for any employer liability.

126 Cong.Rec. S11672 (daily ed. Aug. 26, 1980).

It is clear that notice and demand to one is notice and demand to all. Defendants' position that Section 1301(b)(1) should read to mean that all entities of the common control group should be afforded the same procedural rights as the withdrawn employer must fail. Indeed, such an interpretation would void that section of any significance. The notice and demand of withdrawal liability served upon [one member of the commonly controlled group] by the trustees also was sufficient as to [other members of the group] and the individual defendants. It is immaterial that at the time notice and demand was made, [a defendant] was without assets and unable to pay withdrawal liability.... In enacting Section 1301(b)(1), Congress intended to prevent such evasion of ERISA through the abuse of the structural formalities of overlapping business organizations. *See, e.g., PBGC v. Anthony Co.,* 537 F.Supp. 1048, 1052 n. 6 (N.D.Ill.1982) (Sections 1301(b)(1) and 1362 reflect "congressional concern that the realities of business organizations should prevail over the formalities of corporate structure in imposing liability....")

*Id.* at 881–882.

In light of the above, I conclude that defendants are liable for interim payments of withdrawal liability pending arbitration. The Notice and Demand for Payment

served upon the contributing employer, St. Louis Freight Lines, Inc., and other members of the controlled group on September 25, 1985 constitutes notice and demand on defendants as well.

Accordingly, plaintiffs' motion for summary judgment is GRANTED and defendants' motion for summary judgment is DENIED. IT IS SO ORDERED.