**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, a pension trust, et al., Plaintiffs,**

v.

**George W. ROGERS, Defendant.**

**No. 90–CV–73271–DT.**

United States District Court,
E.D. Michigan, S.D.

July 10, 1992.

David A. Sawyer, Bloomfield Hills, MI, for plaintiffs.

W. Gregory Shanaberger, Birmingham, MI, for defendant.

## OPINION

DUGGAN, District Judge.

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund (the "Fund"), and its trustees (the "Plan Sponsors") (collectively referred to as "Central States"), brought this action to recover an assessment of withdrawal liability from defendant, George W. Rogers, under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. §§ 1381–1461. It is Central States' contention that Rogers is jointly and severally liable for withdrawal liability under the MPPAA's common control group provision in the principal sum of $541,543.94. *See* 29 U.S.C. § 1301(b)(1). Central States claims that the withdrawal liability should be imputed to Rogers as the owner of an unincorporated sole proprietorship, (which the Court shall hereafter refer to as "Rogers' Leasing"), which in turn, is or was during the relevant time, a member of a common control group with Genesee Cartage Company (Genesee), D & S Leasing, Inc. (D & S) and Michiana Trucking, Inc. a/k/a Michiana Leasing (Michiana). In July of 1990, the United States District Court for the Eastern District of Michigan entered a consent judgment against Genesee, D & S and Michiana. *See Central States v. Genesee Cartage Co.,* No. 89–72835, slip op. (E.D.Mich. June 14, 1990) (Gilmore, J.). None of the corporations have paid the judgment in that action.

### I.

The Court conducted the trial of this action without a jury. Based upon the testimony presented and the exhibits introduced, the Court makes the following findings of fact and conclusions of law:

#### A. Findings of Fact

1. Plaintiff, the Central States, Southeast and Southwest Areas Pension Fund, is a multiemployer pension fund within the meaning of 29 U.S.C. §§ 1002(37)(A), 1301(a)(3).

2. Defendant, George W. Rogers, resides and/or does business in this district.

3. Since its incorporation in June of 1981, Rogers has been the sole shareholder of D & S Leasing; on July 24, 1981, Rogers became the sole shareholder of Michiana Trucking, a/k/a Michiana Leasing; on August 16, 1984, Rogers became the sole shareholder of Genesee Cartage Company. D & S, Michiana, and Genesee are now or have been Michigan corporations doing business within the State of Michigan.

4. On December 31, 1984, Rogers, whose address at that time was 218 South Main Street, Milford, Michigan, (218 S. Main), purchased property located at 218 S. Main. Rogers was personally leasing property located at 218 S. Main to Genesee in 1985 and 1986, and receiving rent from Genesee; and

Rogers was personally leasing property located at 218 S. Main to D & S in 1986, and receiving rent from D & S. Rogers' leasing activity in 1985 and 1986 constituted a sole proprietorship operation of which Rogers owned and controlled (Rogers' Leasing).

5. In 1985 Rogers' Leasing, Genesee, D & S and Michiana were owned and controlled by Rogers.

6. Withdrawal liability owed to Central States in the amount of $295,811.70 was assessed against Genesee by notice and demand letter dated March 21, 1986, (mailed to Genesee at 218 S. Main, and received by Genesee on March 24, 1986), 29 U.S.C. § 1399(b)(1); in a May 21, 1986, letter (mailed to Genesee at 218 S. Main, and received by Genesee on May 30, 1986), Central States advised Genesee that the account was past due, 29 U.S.C. § 1399(c)(5); between May 21, 1986, and August 25, 1989, Central States obtained information which led it to conclude that D & S had withdrawn from the Fund and that Genesee, D & S and Michiana were commonly controlled; by letter dated August 25, 1989, (received by Genesee September 5, 1989, at P.O. Box 196, Lake, Michigan), Central States notified Genesee that its withdrawal liability was revised to a total of $541,543.94.

7. Rogers had constructive knowledge of the withdrawal liability as the owner of Rogers' Leasing.

8. Neither Rogers, Genesee, D & S or Michiana requested review of the withdrawal liability under 29 U.S.C. § 1399(b)(2)(A); initiated arbitration under 29 U.S.C. § 1401(a); or made payment towards the withdrawal liability. Prior to Central States filing of the instant action, the statutorily-mandated time to arbitrate had expired, 29 U.S.C. § 1401(a)(1); the amount of the withdrawal liability assessed against the "employer" responsible for the assessment had become fixed, 29 U.S.C. § 1401(b)(1); and the "employer" was in default. 29 U.S.C. § 1399(c)(5).

9. On September 25, 1989, Central States filed Civil Case No. 89–72835 against Genesee, D & S and Michiana to collect the withdrawal liability. 29 U.S.C. § 1401(b)(1).

Based upon the stipulation of the parties, in June of 1990, Judge Gilmore entered a Consent Judgment against Genesee, D & S, and Michiana in Central States' favor. At the time of entry of the Consent Judgment, Central States was unaware of the fact that George Rogers owned Rogers' Leasing.

10. The facts surrounding the defenses Rogers raises to this action are in dispute. The defenses Rogers has raised are governed by the arbitral provisions of the MPPAA, 29 U.S.C. §§ 1381–1399. Such defenses were available to Rogers before the statutorily-mandated time to arbitrate had expired. The facts in this case made a prior resort to arbitration appropriate.

### B. Conclusions of Law

1. This Court has subject matter jurisdiction over this matter as conferred by 29 U.S.C. § 1451(c). The Court has personal jurisdiction over Rogers and venue is proper in this Court. 29 U.S.C. § 1451(d).

2. The Consent Judgment entered in Civil Action No. 89–72835 has no preclusive effect on the instant case.

3. Rogers' sole proprietorship operation, Rogers' Leasing, is now or has been an unincorporated trade or business within the meaning of 29 U.S.C. § 1301(b)(1); and Genesee, D & S and Michiana are now or have been incorporated trades or businesses within the meaning of 29 U.S.C. § 1301(b)(1).

4. In 1985 Rogers' Leasing, Genesee, D & S and Michiana were a "brother-sister group of trades or businesses under common control," e.g., a "common control group," under the applicable ERISA/MPPAA statutory and regulatory scheme, and as such, were a "single employer" within the meaning of 29 U.S.C. § 1301(b)(1).

5. Rogers' Leasing, as a member of a common control group with Genesee, D & S, and Michiana is jointly and severally liable to the Fund for the withdrawal liability. The liability of Rogers' Leasing is imputed to Rogers as the owner of Rogers' Leasing.

6. Rogers cannot raise any defenses that would otherwise have been subject to arbitration. Rogers' failure to seek arbitration within the statutorily-mandated time consti-

tutes a waiver of his right to his asserted defenses. Rogers is now barred by the exhaustion of administrative remedies doctrine from raising such defenses in this action.

## II.

Plan sponsors must determine whether a withdrawal has occurred and "notify the employer of the amount of the liability, prepare a schedule for liability payments, and demand payment...." *Mason & Dixon Tank Lines v. Central States,* 852 F.2d 156, 159 (6th Cir.1988) (citing 29 U.S.C. §§ 1382, 1399(b)(1)). In a March 21, 1986, notice and demand letter Genesee was advised that "as a result of a permanent cessation of contributions to Central States," it had incurred $295,811.70 in withdrawal liability; that the "demand ... applies equally to all members of any controlled group of trades or businesses ... of which [Genesee] is a member"; and that dispute resolution procedures were available (an enclosure set forth such procedures). (Pl.[s'] Ex. 1, Letter from Central States to Genesee of 3/21/86.)[1] When Genesee failed to make payment, by letter dated May 21, 1986, Central States advised Genesee that the account was past due; that failure to make a payment within 60 days from receipt of the notice would constitute a default under ERISA; and that the entire amount would be due and referred to Fund counsel for collection. (Pl.[s'] Ex. 2, Letter from Central States to Genesee of 5/21/86.)

Shortly thereafter, Central States began to question whether D & S had withdrawn from the Fund. By letter dated August 7, 1986, Central States requested that D & S furnish information on a "Statement of Business Affairs" so that a determination of liability could be made. (Pl.[s'] Ex. 4, Letter from Central States to D & S of 8/7/86.) D & S responded that it had not triggered a withdrawal penalty. (Pl.[s'] Ex. 6, Letter from D & S to Central States of 8/17/86.) Rogers signed the response in his capacity as President of D & S, and returned a completed Statement of Business Affairs. The Statement specifically requested disclosure of Rogers' ownership interest in any other entity, identifying a sole proprietorship as one such entity. In response to that question "N/A" was written. (Pl.[s'] Ex. 6, Statement of Business Affairs at 10.) In a second letter to D & S, Central States again requested information pertaining to its belief that D & S had withdrawn from the Fund. (Pl.[s'] Ex. 5, Letter from Central States to D & S of 10/6/86). Rogers again responded, on behalf of D & S, reiterating that D & S had not triggered a withdrawal penalty. (Pl.[s'] Ex. 7, Letter from D & S to Central States of 2/23/87.)

Central States nevertheless concluded that D & S had withdrawn from the Fund. And based upon information gathered from other sources, Central States also concluded that Genesee, D & S and Michiana were members of a common control group. Subsequently, Central States reviewed the March, 1986 assessment, and Genesee was notified that its withdrawal liability was revised "due to a change in the year of withdrawal and inclusion of control group members." (Pl.[s'] Ex. 3, Letter from Central States to Genesee of 8/25/89.) Central States increased its assessment to a total of $541,543.94 based upon past contributions to the Fund from Genesee, D & S and Michiana.

No one requested a review of the original or revised withdrawal liability assessment;[2] no one initiated arbitration;[3] and no one

---

1. "The MPPAA ... contains detailed dispute resolution provisions, in recognition 'that the employer and the Plan may not always be in agreement as to the computation of withdrawal liability.'" *Mason & Dixon,* 852 F.2d at 159 (citation omitted).

2. *See* 29 U.S.C. § 1399(b)(2)(A), which provides:

   **(2)(A)** No later than 90 days after the employer receives the notice [and demand letter] described in paragraph (1), the employer—

   **(i)** may ask the plan sponsor to review any specific matter relating to the determination of the employer's liability and the schedule of payments,

   **(ii)** may identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer, and

   **(iii)** may furnish any additional relevant information to the plan sponsor.

3. *See* 29 U.S.C. § 1401(a)(1), which provides:

   **(1)** Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be re-

made any payments. On September 25, 1989, Central States filed Civil Action No. 89–72835 against Genesee, D & S and Michiana to collect the $541,543.94 in withdrawal liability.[4] Central States alleged that the three corporations were trades or businesses under common control, and as such were a "single employer" under 29 U.S.C. § 1301(b)(1). Rogers was identified as the owner of all three corporations in the complaint; however, Rogers was not a named defendant. In June of 1990, Judge Gilmore entered a Consent Judgment against Genesee, D & S, and Michiana wherein Central States was to receive $957,246.37, with interest to accrue at the statutory rate from the date of entry of the judgment. (Def.['s] Ex. 102.)

### III.

Rogers claims that in light of Civil Action No. 89–72835, Central States is barred by res judicata and Internal Revenue Code standards from "redefining" the members of the control group;[5] that Central States has previously defined the "employer" as a common control group including Genesee, D & S and Michiana; and that Central States cannot assert that two different control groups are responsible for the same withdrawal liability given Internal Revenue Code standards. The labels used by Central States to identify the control group in Civil Action No. 89–72835 and the instant action do suggest that different control groups may be involved—Central States refers to the "Genesee Controlled Group" in Civil Action No. 89–72835, and the "Rogers Controlled Group" in the

instant action. However, the Court does not find the labels controlling.

The Court concludes that in bringing the instant action Central States seeks to establish that Rogers' Leasing is a fourth member of the same control group that stipulated to responsibility for the withdrawal liability in Civil Action No. 89–72835; and that as such, Rogers' Leasing, Genesee, D & S and Michiana are a "single employer" under 29 U.S.C. § 1301(b)(1). The Court rejects Rogers' contention that Central States is barred by res judicata from seeking recovery from him in the present action because he was not included as a defendant in Civil Action No. 89–72835.[6]

Under the principles of joint and several liability, plan sponsors can sue one or more of the members of a common control group, and can collect the entire judgment from one or more of them. *See McDonald v. Centra,* 118 B.R. 903, 914 (D.Md.1990), and cases cited therein, *aff'd,* 946 F.2d 1059 (4th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2325, 119 L.Ed.2d 244 (1992); *Central States v. Hayes,* 789 F.Supp. 1430, 1434 (N.D.Ill.1992), and cases cited therein. A consent judgment entered into concerning the liability of one or more members of a control group is "neither claim nor issue preclusive." *Central States v. Lloyd L. Sztanyo Trust,* 693 F.Supp. 531, 538 (E.D.Mich. 1988); *see also Hayes,* 789 F.Supp. at 1433–34.

The Court accepts Central States' contention that when Civil Action No. 89–72835 was filed and the Consent Judgment entered, it was unaware of the fact that Rogers owned

---

solved through arbitration. Either party may initiate the arbitration proceeding within a 60–day period after the earlier of—
    **(A)** the date of notification to the employer under section 1399(b)(2)(B) of this title, or
    **(B)** 120 days after the date of the employer's request under section 1399(b)(2)(A) of this title. The parties may jointly initiate arbitration within the 180–day period after the date of the plan sponsor's demand under section 1399(b)(1) of this title.

**4.** "If no arbitration has been initiated pursuant to section 1401(a)(1), the amounts demanded by the plan sponsor under section 1399(b)(1) 'shall be due and owing on the schedule set forth by the plan sponsor.' The plan sponsor may bring

an action in state or federal court for collection." *Mason & Dixon,* 852 F.2d at 160 n. 3 (quoting 29 U.S.C. § 1401(b)(1)).

**5.** The MPPAA expressly incorporates the Internal Revenue Code's "control-group" standards. *See* 29 U.S.C. § 1301(b)(1).

**6.** In framing his res judicata argument, Rogers relies on *Connors v. Peles,* 724 F.Supp. 1538 (W.D.Pa.1989). The Court does not find the *Connors* opinion persuasive. The opinion contains a brief discussion of the control group concept and the doctrine of res judicata in dicta, and the facts are distinguishable. No control group claim was ever asserted by the plan sponsors in *Connors.*

an unincorporated sole proprietorship, Rogers' Leasing.[7] The Court views George Rogers' failure to disclose his ownership interest in Rogers' Leasing as a contributing factor to Central States' inability to discover such ownership prior to filing Civil Action No. 89–72835. In general, plan sponsors have no way of knowing all the other possible entities commonly owned by a participating corporation. In contrast, stockholders and officers of corporations certainly are aware of their holdings. *See IUE AFL–CIO Pension Fund v. Barker & Williamson, Inc.,* 788 F.2d 118, 128 (3rd Cir.1986). Section 1399(a) of Title 29 provides a method whereby plan sponsors can obtain information regarding control group members:

> An employer shall, within 30 days after a written request from the plan sponsor, furnish such information as the plan sponsor reasonably determines to be necessary to enable the plan sponsor to comply with the requirements of this part [dealing with notice and collection of withdrawal liability].

29 U.S.C. § 1399(a). Under section 1399(a), employers are *required* to furnish certain information to plan sponsors. As provided for under section 1399(a), on two occasions in 1986 Central States sought information from D & S. In response, Rogers returned a completed Statement of Business Affairs which specifically requested information regarding his ownership interest in sole proprietorships. George Rogers did not disclose his ownership of Rogers' Leasing. Had Rogers complied with section 1399(a) by providing complete information in 1986, Central States would have been aware of his interest in Rogers' Leasing prior to filing Civil Action No. 89–72835.

The Court concludes that the Consent Judgment does not bar further litigation on the claim involved. Additionally, since the Consent Judgment did not include any findings, the parties were not bound by any issues involved. *See Sztanyo Trust,* 693 F.Supp. at 538.

"The MPPAA requires employers who withdraw, completely or partially, from a multiemployer pension plan to contribute to the plan a proportionate share of the unfunded vested benefits." *Mason & Dixon,* 852 F.2d at 158 (citations omitted). Such proportionate share is known as "withdrawal liability." Section 1301(b)(1) of Title 29 provides:

> An individual who owns the entire interest in an unincorporated trade or business is treated as his own employer, and a partnership is treated as the employer of each partner who is an employee within the meaning of section 401(c)(1) of Title 26. For purposes of this subchapter, under regulations prescribed by the [Pension Benefit Guaranty] corporation, all employees of trades or businesses (whether or not incorporated) which are *under common control* shall be treated as employed by a single employer and all such trades and businesses as a *single employer.* The regulations prescribed under the preceding sentence shall be consistent and coextensive with regulations prescribed for similar purposes by the Secretary of the Treasury under section 414(c) of Title 26.

29 U.S.C. § 1301(b)(1) (emphasis added). "[T]he primary purpose of the common control provision is to ensure that employers will not circumvent their ERISA and MPPAA obligations by operating through separate entities." *Mason & Dixon,* 852 F.2d at 159 (citations and footnote omitted). Accordingly, all trades or businesses under common control are treated as a "single employer," and "'if a terminating single employer plan is maintained by one or more members of a controlled group, the entire group is the 'employer' and is responsible for any employer liability.'" *Id.* at n. 2 (quoting Senator Williams, a key MPPAA sponsor, 126 Cong. Rec. S11672 (Aug. 26, 1980)). Thus, the statute sets forth two requirements for a finding of "single employer" status—first, Rogers' Leasing, Genesee, and D & S and Michiana must be found to be "trades or businesses" and, second, they must be under "common control."

---

7. Central States claims that they learned of Rogers' leasing business for the first time during post-judgment discovery in Civil Action No. 89–72835.

## A.

### 1.

■ The evidence establishes that Rogers owned 218 S. Main, that he was personally leasing the property to D & S and Genesee, and that he was receiving rent in return. The leasing activity constituted a sole proprietorship operation. "A sole proprietorship leasing arrangement clearly constitutes a trade or business includable in a controlled group for purposes of withdrawal liability." *Central States v. Bay,* 684 F.Supp. 483, 485 n. 8 (E.D.Mich.1988), and cases cited therein. Rogers argues that since he owns 218 S. Main jointly with his wife, the business is not a *sole* proprietorship. The Court disagrees. Under spousal attribution rules, joint ownership with his spouse does not preclude Rogers from being deemed the "sole" owner of Rogers' Leasing. *See id.,* (citing 26 C.F.R. § 11.414(c)). The Court concludes that George Rogers owned Rogers' Leasing, and that Rogers' Leasing is now or has been an "unincorporated trade or business" within the meaning of 29 U.S.C. § 1301(b)(1).

### 2.

■ Rogers claims he never owned Genesee. While acknowledging that he entered into a Stock Purchase Agreement with Florence I. Vorce dated August 14, 1984, to purchase Genesee, and that he operated Genesee beginning in August of 1984, he claims that the sale was never consummated. Rather, Rogers claims he and Vorce agreed that he would operate Genesee until January 1, 1986, before deciding whether to buy it, and that in December of 1985 he decided not to complete the purchase. He claims the stock was never issued in his name, that he only paid a portion of the purchase price, and that in November of 1985 he notified Vorce that "effective December 21, 1985, *Genesee Cartage Company will revert back to [Vorce's] ownership . . . .*" (Pl.[s'] Ex. 11, Letter from Rogers to Vorce of 11/15/85; emphasis added).[8] The Stock Purchase Agreement provides, in pertinent part:

1. *Purchase, Sale and Delivery.* Seller hereby sells and Purchaser hereby purchases the 1,000 shares of common capital stock (the "Stock") issued by Genesee and registered in the name of Seller. Seller shall deliver to Purchaser the original certificate representing the Stock on the Closing Date as defined herein.

2. *Purchase Price.* The purchase price of the Stock shall be Five Thousand ($5,000.00) Dollars (the "Purchase Price") payable in accordance with the Promissory Note attached hereto as Exhibit "A". To secure payment of the Purchase Price, Purchaser grants Seller a security interest in the Stock in accordance with the Pledge Agreement attached hereto as Exhibit "B".

(Pl.[s'] Ex. 10, Stock Purchase Agreement ¶¶ 1, 2.) Rogers signed the Agreement as the "Purchaser." Exhibits A and B, the Promissory Note and Pledge Agreement, respectively, have not been provided to the Court.[9] Further, the "Closing Date" is not specified anywhere in the Agreement.

Based upon the plain language of the Stock Purchase Agreement, the undisputed fact that Rogers began operating Genesee in August of 1984, and Rogers' November, 1985 letter to Vorce, the Court concludes that Rogers did purchase Genesee from Vorce on August 14, 1984, becoming its sole owner. It is undisputed that Genesee, a Michigan corporation, is a "trade or business" for ERISA/MPPAA purposes.

### 3.

The undisputed record establishes that since its incorporation Rogers has been D & S' sole shareholder, (Pl.[s'] Ex. 8, Rogers' Aff. ¶¶ 3, 4), and that D & S, a Michigan corporation, is a "trade or business" for ERISA/MPPAA purposes.

### 4.

Facts concerning Michiana have not been extensively litigated by the parties. Accordingly, the primary focus of this Opinion is on Rogers' Leasing, Genesee and D & S. How-

---

8. Rogers' claim that he "gave Genesee back to Vorce" effective December 21, 1985, is discussed, *infra.*

9. At trial, counsel for Central States asked Rogers' to read from what was purported to be the Pledge Agreement, however, the document was not admitted into the record.

ever, the record establishes that on July 24, 1981, Rogers purchased 100% of Michiana's stock. (Pl.[s'] Ex. 9, Ans. to Interrog. ¶ 2(C).) It is undisputed that Michiana, a Michigan corporation, is a "trade or business" for ERISA/MPPAA purposes.

## B.

■ Next, the Court must determine whether Rogers' Leasing was under common control with Genesee, D & S and Michiana. "Trades or businesses under common control" is defined by regulation to include a "brother-sister group" which means:

> two or more organizations conducting trades or businesses if (i) the same five or fewer persons who are individuals, estates or trusts own (directly and with the application of [26 C.F.R.] § 1.414(c)–4), a controlling interest of each organization, and (ii) taking into account the ownership of each such person only to the extent such ownership is identical with respect to each such organization, such persons are in effective control of each organization. The five or fewer persons whose ownership is considered for purposes of the controlling interest requirement for each organization must be the same persons whose ownership is considered for purposes of the effective control requirement.

26 C.F.R. § 1.414(c)–2(c)(1) (1991). The phrase "controlling interest" means:

> (A) In the case of an organization which is a corporation, ownership of stock possessing at least 80 percent of total combined voting power of all classes of stock entitled to vote of such corporation or at least 80 percent of the total value of shares of all classes of stock of such corporation;

> \*    \*    \*    \*    \*    \*

(D) In the case of an organization which is a sole proprietorship, ownership of such sole proprietorship.

26 C.F.R. §§ 1.414(c)–2(b)(2)(i)(A) and (D).

The Court finds that in 1985 George Rogers owned 100% of Rogers' Leasing, Genesee, D & S and Michiana, and that the four entities were a brother-sister group of trades or businesses under common control, *i.e.*, a "common control group," under the applicable ERISA/MPPAA statutory and regulatory scheme. As such, Rogers' Leasing, Genesee, D & S and Michiana were a "single employer" within the meaning of 29 U.S.C. § 1301(b)(1).

## V.

■ The undisputed record establishes that Genesee received a notice and demand letter, a delinquency letter, and a revised notice and demand letter regarding the withdrawal liability. The law is clear that "notice to one member of the control group constitutes notice to all members of the group." *McDonald v. Centra, Inc.*, 946 F.2d 1059, 1062 (4th Cir.1991), and cases cited therein, *cert. denied,* —— U.S. ——, 112 S.Ct. 2325, 119 L.Ed.2d 244 (1992). It is also undisputed that neither Rogers' Leasing, Genesee, D & S or Michiana, collectively or individually, sought review under 29 U.S.C. § 1399(b)(2), or initiated arbitration to dispute the assessment within the time period prescribed by 29 U.S.C. § 1401(a)(1). The law is equally clear that once the liability of the "employer" becomes fixed due to failure to timely arbitrate, the amount assessed is due and owing. *Mason & Dixon*, 852 F.2d at 160 n. 3 (citing 29 U.S.C. § 1401(b)(1)). Moreover, once the liability becomes fixed, the amount assessed is due and owing from whomever may later be found to be within the common control group.[10] And members of a common control group are jointly and severally liable for

---

10. *See McDonald v. Centra, Inc.*, 946 F.2d 1059 (4th Cir.1991); *Connors v. Ryan's Coal Co.*, 923 F.2d 1461 (11th Cir.1991); *I.A.M. Nat'l Pension Fund v. Slyman Indus.*, 901 F.2d 127 (D.C.Cir. 1990); *Trustees of Western Teamsters Pension Trust Fund v. Lafrenz*, 837 F.2d 892, 894 (9th Cir.1988); *Teamsters Pension Trust Fund v. Allyn Transp. Co.*, 832 F.2d 502 (9th Cir.1987); *IUE AFL–CIO Pension Fund v. Barker & Williamson, Inc.*, 788 F.2d 118 (3rd Cir.1986); *Teamsters Pension Trust Fund v. Laidlaw Indus.*, 745 F.Supp. 1016 (D.Del.1990); *O'Connor v. DeBolt Transfer, Inc.*, 737 F.Supp. 1430 (W.D.Pa.1990); *Central States v. Lloyd L. Sztanyo Trust*, 693 F.Supp. 531 (E.D.Mich.1988); *Central States v. Bay*, 684 F.Supp. 483 (E.D.Mich.1988); *Central States v. Skyland Leasing*, 691 F.Supp. 6 (W.D.Mich.1987), *aff'd*, 892 F.2d 1043 (6th Cir. 1990); *Central States v. Long*, 687 F.Supp. 298 (E.D.Mich.1987).

withdrawal payments. *Central States v. Chatham Prop.*, 929 F.2d 260, 264 (6th Cir. 1991).

The Court concludes that no one requested arbitration; that the time to arbitrate has expired; and that the liability of the "employer," i.e., the "common control group" consisting of Rogers' Leasing, Genesee, D & S and Michiana has become fixed.

## VI.

Relying on 29 U.S.C. § 1401(a), Central States contends that since no one requested arbitration, any defenses Rogers may have had to the imposition of withdrawal liability have been waived. Section 1401(a) is regarded as an exhaustion of administrative remedies requirement. *Central States v. 888 Corp.*, 813 F.2d 760, 764 (6th Cir.1987). "Under the MPPAA, arbitration is not a jurisdictional prerequisite for district court review. Nevertheless, it is the preferred method of dispute resolution under the MPPAA, and normally the initial step preceding judicial intervention." *Mason & Dixon*, 852 F.2d at 163 (citations omitted).

[A]rbitration is the initial stage of the dispute resolution process established by the statute ... judicial consideration is to follow, and ... is to take the form of a proceeding "to enforce, vacate or modify the arbitrator's award."

*Teamsters Pension Trust Fund v. Allyn Transp. Co.*, 832 F.2d 502, 504 (9th Cir.1987) (citations omitted).

■ Therefore, absent some exception to the exhaustion requirement, where the time to seek arbitration has expired, the "employer" cannot raise any defenses that would otherwise have been subject to arbitration. *See 888 Corp.*, 813 F.2d at 764.[11] Or, stated another way, in order to preserve for judicial review defenses concerning disputes under 29 U.S.C. §§ 1381–1399, those defenses must first be raised in arbitration, or they are waived unless some exception to the exhaustion of administrative remedies doctrine applies.

In *888 Corp.*, the Sixth Circuit set forth the standard to be applied in determining whether an exception to the exhaustion requirement applies, instructing that "[t]he doctrine is to be applied with an 'understanding of its purposes and of the particular administrative scheme involved.'" 813 F.2d at 764 (citation omitted).

The purpose of the exhaustion of administrative remedies doctrine is to permit an administrative agency to apply its special expertise in interpreting relevant statutes and in developing a factual record without premature judicial intervention. An overall goal is to promote judicial economy.

Since the facts surrounding 888's DEFRA defense are not in dispute, there is no need here to develop a factual record. No particular agency expertise is needed to decide the issue in this case. Judicial economy would not be served by requiring 888 to submit this case to arbitration only to be told by an arbitrator it had failed to make a timely demand for arbitration. Where the purposes behind the exhaustion of administrative remedies are not served, exhaustion will not be required.

*Id.* (citations omitted). 888's defense was based upon section 558 of the Deficit Reduction Act of 1984, "which had not been enacted at the time the Fund made demand upon 888 for the withdrawal liability." *Id.* Acknowledging that "disputes under the MPPAA are normally to be resolved by the arbitral process," the Court found that the particular facts of the case made "a prior resort to arbitration inappropriate." *Id.* (citing *Mar-*

---

**11.** *Accord, McDonald*, 946 F.2d 1059; *Connors*, 923 F.2d 1461; *Trustees of Colorado Pipe Indus. Pension Trust v. Howard Elec. & Mech.*, 909 F.2d 1379 (10th Cir.1990), *cert. denied*, 498 U.S. 1085, 111 S.Ct. 958, 112 L.Ed.2d 1046 (1991); *Slyman Indus.*, 901 F.2d 127; *Bowers v. Transportacion Maritima Mexicana*, 901 F.2d 258 (2nd Cir. 1990); *Robbins v. Chipman Trucking*, 866 F.2d 899 (7th Cir.1988); *New York Teamsters Conference Pension & Retirement Fund v. McNicholas Transp. Co.*, 848 F.2d 20 (2nd Cir.1988); *ILGWU Nat'l Retirement Fund v. Levy Bros. Frocks*, 846 F.2d 879 (2d Cir.1988); *Allyn*, 832 F.2d 502; *I.A.M. Nat'l Pension Fund v. Clinton Engines Corp.*, 825 F.2d 415 (D.C.Cir.1987); *Barker & Williamson*, 788 F.2d 118; *Hayes*, 789 F.Supp. 1430; *Laidlaw Indus.*, 745 F.Supp. 1016; *DeBolt Transfer*, 737 F.Supp. 1430; *ILGWU Nat'l Retirement Fund v. Empire State Mills Corp.*, 696 F.Supp. 885 (S.D.N.Y.1988); *Skyland Leasing*, 691 F.Supp. 6; *Long*, 687 F.Supp. 298; *Jaspan v. Certified Indus.*, 645 F.Supp. 998 (E.D.N.Y.1985).

*vin Hayes Lines, Inc. v. Central States,* 814 F.2d 297, 300 (6th Cir.1987)). Thus, the *888 Corp.* decision is a very fact specific and narrow exception to the exhaustion of administrative remedies doctrine. *See McDonald,* 946 F.2d at 1064. The decision nonetheless provides the framework within which this Court must decide whether Rogers' asserted defenses are waived due to the failure of the control group to timely arbitrate.

As an initial matter, the Court notes that the facts surrounding Rogers' defenses in this case, unlike those in *888 Corp.,* are in dispute. Further, such facts are not well documented. Moreover, to avoid responsibility for the withdrawal liability, Rogers raises defenses which require that this Court make factual determinations under MPPAA arbitral provisions. The Sixth Circuit has stated unequivocally that " '[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 *shall* be resolved through arbitration.' " *Mason & Dixon,* 852 F.2d at 163–64 (emphasis added by the Sixth Circuit quoting *Clinton Engines,* 825 F.2d at 417).

Rogers claims that in June of 1986, he did not own any interest in Genesee; and therefore, he was not a member of the control group with Genesee, D & S and Michiana when Genesee and/or D & S withdrew from the Fund. Rogers claims it is undisputed that the withdrawal date of the control group was June, 1986. The Court finds that the withdrawal date is very much in dispute. Central States first concluded Genesee had withdrawn from the Fund as of December 21, 1985. At that time, Central States was unaware of Genesee's membership in the control group, and therefore, assessed withdrawal liability based upon Genesee's contribution history only. Central States later obtained information that Genesee was a member of a control group with D & S and Michiana, and revised the assessment accordingly. Still later, Central States discovered that Rogers' Leasing was a member of the same control group. These facts suggest this case may involve an assessment based upon both a partial and a complete withdrawal from the Fund.

There are two types of employer withdrawal from multiemployer plans for which liability is assessed: complete and partial. Complete withdrawal ... is defined as follows: "For purposes of this part, a complete withdrawal from a multiemployer plan occurs when an employer—(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." Partial withdrawal requires a more complicated definition but, in brief, is defined as follows:

> Except as otherwise provided in this section, there is a partial withdrawal by an employer from a plan on the last day of a plan year if for such plan year— ... there is a partial cessation of the employer's contribution obligation.

The date of a complete withdrawal under MPPAA is, in brief, the date the obligation to contribute to the plan ceases or the date on which concerned operations cease. A partial withdrawal is deemed to have occurred on the last day of a plan year if for that year there was a ... partial cessation of the obligation to contribute to the plan.

*888 Corp.,* 813 F.2d at 765 nn. 4–5 (citing 29 U.S.C. §§ 1385(a), 1383(e)).

The parties agreed that there were issues of fact as to the date Genesee ceased operations, and hence, the date Genesee withdrew from the Fund. (Final Pretrial Order, Issues of Fact to be Litigated, ¶¶ 6, 7.) The Court finds other issues of fact are also in dispute, *i.e.,* whether Genesee's withdrawal was partial or complete, the date D & S withdrew from the Fund, and whether D & S' withdrawal was partial or complete. All of these factual issues pertain to determinations to be made under 29 U.S.C. §§ 1383 and 1385, and are precisely the type of factual disputes an arbitrator skilled in such matters should decide. *See Marvin Hayes Lines,* 814 F.2d at 299–300.

Rogers also claims he gave Genesee back to Vorce effective December 21, 1985, notably, on the same day Genesee ceased its operations. It follows, according to Rogers, that he cannot be held responsible for the withdrawal liability because he was not a

member of a control group with Genesee on the date Genesee and/or D & S withdrew from the Fund. As previously discussed, the evidence offered regarding Rogers' purchase of Genesee was ambiguous, at best. The evidence offered to support his claim that any interest he had in Genesee was severed on December 21, 1985, is even less clear. Since the Court has found that Rogers did own Genesee in 1984, the claim that he "gave the Company back" to its former owner in late 1985, on the same day the company ceased doing business, raises many factual questions; not the least of which is whether Rogers' principal purpose in giving Genesee back to Vorce was the evasion or avoidance of withdrawal liability, an issue that arises under 29 U.S.C. § 1392(c).[12] *See Teamsters Joint Council No. 83 v. Centra, Inc.,* 947 F.2d 115, 123 (4th Cir.1991); *Flying Tiger Line v. Teamsters Pension Trust Fund,* 830 F.2d 1241, 1250 (3rd Cir.1987); *Banner Indus. v. Central States,* 657 F.Supp. 875, 880–82 (N.D.Ill.1987), *aff'd,* 875 F.2d 1285 (7th Cir.), *cert. denied,* 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989).

Having found that Rogers was a member of the control group at one point in time, the Court concludes his claim that he gave Genesee back to Vorce on the date Genesee ceased its operations raises the defense that he was no longer an "employer" on the date of withdrawal. This defense raises factual disputes that should have been resolved through arbitration.

While no provision of the MPPAA specifically addresses who should resolve questions concerning the status of a one-time employer, the statutory scheme specifically provides that once an entity is an employer, it will be deemed to have withdrawn when it "permanently ceases to have an obligation to contribute under the plan." Any such employer will, under MPPAA section 1381, be assessed with-

drawal liability unless that employer satisfies a statutory provision relieving it of liability. . . .

[w]hether the requirements of [a statutory] safe-haven have been satisfied necessarily turns on the facts of each case. . . . [T]he issue of whether one remains an employer on the date of withdrawal is not the same as whether one ever became an "employer" for the purposes of ERISA generally and MPPAA in particular. The latter is an issue for the court since its resolution determines the arbitrator's authority over the dispute. The former is an issue for the arbitrator since its resolution turns on the applicability of MPPAA provisions relating to employer withdrawal—provisions Congress specifically placed within the purview of the arbitrator.

*Flying Tiger,* 830 F.2d at 1250 (citing *Banner,* 657 F.Supp. at 882) (other citations omitted), *accord, Centra,* 947 F.2d at 123.[13]

Rogers' defense that he divested himself of his ownership interest in Genesee prior to the date Genesee and/or D & S withdrew from the Fund raises factual questions governed by provisions of the MPPAA Congress has mandated be arbitrated. The defense was available to Rogers before the time to arbitrate had expired, and should have been raised in arbitration to allow the development of a factual record. In light of the Sixth Circuit's reasoning in *888 Corp.,* the Court concludes that the facts of this case required arbitration. There was clearly a need to allow an arbitrator to apply his or her special expertise in interpreting the relevant statutory provisions, as well as developing a factual record. Having failed to request arbitration, the control group, and its individual members, including George Rogers as the owner of Rogers' Leasing, is now barred by the exhaustion of administrative remedies doctrine from raising the defense in this Court in the first instance.[14]

---

**12.** 29 U.S.C. § 1392(c), entitled "Transactions to evade or avoid liability," provides: "If a principal purpose of any transaction is to evade or avoid liability under this part, this part [regarding employer withdrawals] shall be applied (and liability shall be determined and collected) without regard to such transaction."

**13.** The Sixth Circuit has cited the *Flying Tiger* and *Banner* decisions with approval. *Mason & Dixon,* 852 F.2d at 167.

**14.** In the Final Pretrial Order, and for the first time, Rogers asserted a defense under 29 U.S.C. § 1390. That defense is also barred under the exhaustion of administrative remedies doctrine. *See also* E.D.Mich.Local Rule 16.2(a) ("the pre-

The Court recognizes that in an action against a putative member of a control group, the exhaustion of administrative remedies doctrine can result in harsh consequences. However, "where a party against which withdrawal liability is being asserted was certainly a part of the controlled group of an employer subject to the MPPAA at some point in time, and where the issues in dispute fall within the purview of MPPAA provisions that are explicitly designated for arbitration, the Act's dispute resolution procedures *must be followed.*" *Flying Tiger,* 830 F.2d at 1247 (emphasis added); *see also Barker & Williamson,* 788 F.2d at 129–130. Moreover,

> Congress intended that disputes over withdrawal liability would be resolved quickly, and established a procedural bar for employers who fail to arbitrate disputes over withdrawal liability in a timely manner. *See* 29 U.S.C. § 1401(b)(1). If a party wishes to seek judicial resolution of its dispute without first submitting to arbitration it should seek declaratory and/or injunctive relief against the imposition of withdrawal liability before the time period to initiate arbitration expires. The failure to seek such relief on a timely basis may, in some instances, lead to a harsh result, but the harshness of the default is largely a "self-inflicted wound."

*Levy Bros. Frocks,* 846 F.2d at 887 (citations omitted).

## VII.  Conclusion

Central States has met its burden of proof to persuade this Court by a preponderance of the evidence that: (1) Rogers' Leasing was a member of the control group with Genesee, D & S and Michiana; (2) Genesee, on behalf of all the members of the control group, received notice of the withdrawal liability assessment; (3) no member of the control group, individually or collectively, initiated arbitration; (4) the facts of this case did warrant a prior resort to arbitration given the many unresolved factual issues implicating those provisions of the MPPAA Congress mandated for arbitration; (5) the time for arbitration has expired; (6) George Rogers,

as the owner of Rogers' Leasing, has waived his right to assert defenses arising under MPPAA sections 1381–1399; and (6) Rogers is in default pursuant to 29 U.S.C. § 1399(c)(5).

Judgment shall therefore be entered in favor of plaintiffs and against defendant George W. Rogers.

A judgment consistent with this Opinion shall be submitted for entry by the Court.

trial order shall not constitute a vehicle for add-

ing ... defenses.'').